**Jeffrey Alan BUHRING, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1081S313.

Supreme Court of Indiana.

Sept. 19, 1983.

William F. Carroll, Carroll & Donaldson, Attys., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Jeffrey Alan Buhring was convicted by a jury in the Lake Superior Court, Criminal Division, of murder and sentenced to a term of fifty-five years imprisonment. Appellant now directly appeals and raises the following two issues for our review:

1. whether the trial court erred by determining that Appellant was competent to stand trial and by refusing to order a fourth competency hearing; and

2. whether the trial court erred by denying Appellant's request to close final argument on the issue of his alleged insanity.

At approximately six o'clock during the evening of June 27, 1979, five-year-old Julie Randolph was playing in the front yard of her parents' home in Merrillville, Indiana. Appellant, a stranger to Julie, walked up to the child, grabbed her and stabbed her repeatedly while holding her on the ground. Julie subsequently was taken to Broadway Methodist Hospital where she was pronounced dead on arrival.

I

Three separate hearings were held prior to Appellant's trial to determine Appellant's competency to stand trial. In addition, the trial court *sua sponte* ordered two doctors to re-examine Appellant subsequent to the three hearings but prior to trial. At the commencement of Appellant's trial, defense counsel renewed his motions suggesting Appellant's incompetency on the grounds that Appellant had not regained sufficient comprehension to appreciate the proceedings against him and to aid counsel, and that if found competent, Appellant's competency was artificially induced by the administration of the psychotropic drug, Stelazine.

The first time Appellant's competency was brought before the trial court was by way of a defense motion filed February 13, 1980. The trial court at that time appointed psychiatrists Frank Hogle and Lee Periolat to examine Appellant. At a subsequent hearing, Dr. Periolat testified that in his opinion Appellant was competent to stand trial. Dr. Hogle did not testify but the parties stipulated to the admission of his written report. Dr. Hogle's report indicated that he believed Appellant to be incompetent. Dr. Gutierrez, another psychiatrist, was called by the defense and testified that Appellant was incompetent to stand trial. The trial court thereupon found Appellant not competent to stand trial and committed him to the Department of Mental Health.

Dr. H. Matheu, a consulting psychiatrist with the Logansport State Hospital, subsequently filed a report with the trial court. On June 25, 1980, a further competency

hearing was ordered. This hearing was held on August 15 and 27. At this hearing, Dr. Matheu and Dr. Periolat testified that they believed Appellant competent to stand trial. Dr. Hogle testified that he believed Appellant to be incompetent. Following this second hearing, the trial court found Appellant to be incompetent and again committed him to the Department of Mental Health.

On December 12, 1980, Dr. Matheu filed a further status report on Appellant and a third competency hearing was ordered. This hearing was held on February 13, 1981. Since Dr. Hogle was not available at this time, Dr. Periolat and Dr. Mohammad Arshad were appointed to examine Appellant. At this hearing, Doctors Periolat, Arshad and Matheu testified that on the basis of their examinations, Appellant was competent to stand trial. Said Doctors further testified that they were aware that Appellant was taking forty milligrams of Stelazine per day. They specifically testified as to the effects of this medication upon Appellant's behavior and thought processes. At the February 13 hearing, Dr. Periolat testified that Appellant was alert, well oriented, in good contact with reality, and apparently had no clinical impediment which might prevent him from communicating with his attorney and standing trial. Dr. Periolat also testified that Stelazine is given in cases involving schizophrenic psychosis and helps a person to think more clearly and more appropriately. Dr. Arshad testified that he examined Appellant on January 24, 1981. He also testified that Stelazine did not have any effect on Appellant's ability to understand what was being said to him and that it did not change Appellant's condition except that: "we get the benefit of the toxic effect of the medication. The toxic effect of the medication is sedation." Dr. Arshad stated that Appellant's thought processes were not altered by the medication and that he believed Appellant to be competent to stand trial. Dr. Arshad further stated that Stelazine could produce a dullness of sensations or a "sort of a lack luster personality" but that he did not notice this dullness in Appellant. Dr.

Matheu testified that at the time of his examination, he believed Appellant to be competent. He testified that he prescribed forty milligrams of Stelazine per day for Appellant. He stated that in some cases Stelazine removed or "dampened down" hallucinations and delusions. He described the effect of Stelazine on the thought processes as follows:

"Now, how it effects (sic) the thought processes, for example, I am a sick man and I am hearing a lot of voices. Okay, I thought that people are talking about me. I am preoccupied about that, if it bothers me, and my concentration on the subject might be deminished (sic). Now, if I take stelazine and these symptoms disappear, then I could concentrate more, and I could relate more. This is how taking medication could help individuals in assuming competency."

Dr. Matheu also testified that in his opinion, Appellant would be competent to stand trial without the use of Stelazine. A further noteworthy fact is that Appellant's Stelazine dosage was reduced to fifteen milligrams a day during trial.

At Appellant's request, the jury was informed that Appellant was taking Stelazine at the rate of fifteen milligrams a day. Moreover, the doctors testified before the jury on the effects of this drug. The trial judge further indicated that subsequent to the last competency hearing of February 13, he ordered Dr. Arshad and Dr. Batacan to examine Appellant and that both doctors found Appellant competent to stand trial. Although not all of the medical reports are included in the record, it appears that Dr. Batacan's examination of Appellant occurred on May 3, 1981. The trial commenced on May 18, 1981.

■ Appellant now contends that the trial court should have conducted a fourth competency hearing upon being advised by defense counsel at the start of Appellant's trial that Appellant was incapable of understanding the proceedings and of assisting his attorney and upon being informed that Stelazine was being administered to control

Appellant. No evidence was presented to the trial court at that time other than the affidavit of defense counsel generally claiming that Appellant was incapable of understanding the proceedings and of assisting counsel. The trial court was aware that Stelazine was being taken by Appellant since this was testified to by all of the doctors involved during the various competency hearings prior to trial. The trial court is vested with discretion to determine if reasonable grounds exist for believing that a defendant is competent to stand trial. The trial judge's decision in this regard will be disturbed upon review only by a showing of clear error. When there has been a determination of competency to stand trial and there is no event or occurrence subsequent to that determination to indicate a change in a defendant's mental condition, an additional hearing on competency is not required. *Feggins v. State,* (1980) Ind., 400 N.E.2d 164, *reh. denied; Ray v. State,* (1979) Ind., 396 N.E.2d 373, *reh. denied* (1980); *Malo v. State,* (1979) 266 Ind. 157, 361 N.E.2d 1201. The record here shows that the trial judge gave careful attention to the question of Appellant's competency by twice referring him to the Department of Mental Health for observation. On the recommendation of the consulting psychiatrist there, a further hearing was held in which three doctors testified before the court that Appellant was then competent to stand trial and that the Stelazine which Appellant was taking would not affect Appellant's competency but would, in fact, be an aid to his competency. In addition, the trial court had two of the doctors re-examine Appellant just prior to trial and they indicated to the court that there was no change in Appellant's condition and that he still was competent to stand trial. The jury was advised of all of this. The trial court accordingly did not abuse its discretion by finding Appellant competent to stand trial. We do not find that there was any reasonable basis before the trial court to believe that Appellant was not competent to stand trial when he did.

Appellant also contends that his conviction was contrary to law due to the fact that he was forced to go to trial while he was incompetent to stand trial. In view of our finding that the trial court properly found Appellant competent to stand trial, this argument is without merit.

## II

█ Appellant next contends that since he bore the burden of proving his insanity defense by a preponderance of the evidence, he should have had the right to make the opening and closing statements on that issue. This was denied by the trial court. Appellant argues in his brief that there is no statute covering the order of final arguments in criminal or civil cases and that, therefore, the party carrying the burden of proof gets the right to open and close argument. Appellant is incorrect in his assertion that no statute covers the order of final arguments as Ind.Code § 35-1-35-1 (Burns 1979) [repealed effective September 1, 1982] provides:

"Fourth. When the evidence is concluded the prosecuting attorney and the defendant or his counsel may, by agreement in open court, submit the case to the court or jury trying the same, without argument. But if the case be not so submitted without argument the prosecuting attorney shall have the opening and closing of the argument. . . . "

Accordingly, it is clear that our Legislature intended for the State to open and close the final argument to the jury in a criminal case. As the State points out, the statutory provision which replaced Ind.Code § 35-1-35-1 likewise dictates that the State open and close the final argument to the jury in criminal cases. Ind.Code § 35-37-2-2 (Burns Supp.1982) [added by Acts 1981, P.L. 298 § 6]. Since the Acts of 1981 did not change the order of final argument as previously provided in Ind.Code § 35-1-35-1, it is clear that the Legislature still intends for the State to open and close the final arguments to the jury in a criminal case. It therefore was proper for the trial court to deny Appellant's motion and to permit the State to open and close on all issues.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.