Bruno MONTANO, Appellant,

v.

STATE of Indiana, Appellee.

No. 1083 S 377.

Supreme Court of Indiana.

Oct. 12, 1984.

A. Leon Sarkisian, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunica, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Bruno Montano was tried by a jury in the Lake Superior Court, Criminal Division, for the crimes of murder and manslaughter. The jury found that he was guilty, but mentally ill, of the crime of voluntary manslaughter, a class B felony, in count I, and that he was guilty, but mentally ill, of the crime of murder, a class A felony, in count II. The trial judge subsequently committed Montano to the Department of Corrections for assignment to the proper facility for a term of twenty (20) years under Count I and a term of forty-five (45) years under Count II.

Appellant now raises four issues for our consideration in this direct appeal as follows:

1. error of the court in determining that Defendant was competent to stand trial;

2. sufficiency of the evidence regarding Defendant's sanity at the time of the crime;

3. denial of Defendant's motions for continuance; and

4. admission of photographic items into evidence.

The evidence showed that on June 22, 1982, defendant Bruno Montano killed his mother, Elisa Montano, and his niece, Marissa Velez, by striking them with a heavy metal wrench. The apparent reason for the incident was that Defendant's mother was in the process of preparing papers to commit the defendant to a mental institution and Defendant stated he did not want to return to the hospital.

I

Appellant Montano claims the trial court erred by permitting the cause to go to trial without properly determining Montano was competent to stand trial.

In July, 1982, the trial court appointed psychiatrists George Batacan, Lee Periolat, and Marcus Wigutow, to examine Defendant to determine his competency to stand trial. At a subsequent hearing, the trial court found the defendant not competent to stand trial and committed him to the Department of Mental Health. Subsequently, Dr. John Keating, a psychiatrist employed by the Logansport State Hospital, filed a report with the trial court which stated the defendant had attained the ability to understand the proceedings and was now competent to be tried. Defendant at that time moved for a hearing and the trial judge ordered a second examination to determine competency of the defendant. At a hearing on January 26, 1983, Drs. Batacan and Wigutow testified that the defendant was competent to stand trial despite the fact that Defendant was taking 400 milligrams of the psychotropic drug Thorazine. Dr. Wigutow testified the defendant was alert, well oriented, and had no clinical impediment which might prevent him from communicating with his attorney and standing trial. The medical testimony was that the taking of Thorazine does not contribute to incompetency, but rather is an aid to relax the patient, enable him to understand, concentrate, and work on the problem before him.

Immediately prior to trial on May 23, 1983, however, defense counsel objected to the commencement of trial because he claimed Defendant's competency was artificially induced by means of the drug Thorazine. Furthermore, he desired to introduce testimony of Dr. Peter Gutierrez, a family

practice physician. The trial court found that having already determined competency to stand trial on the testimony of psychiatrists who had examined Defendant, and having found no evidence of an event or occurrence subsequent to that determination indicating a change in the defendant's mental condition, an additional hearing on competency was not required. We see no error in the manner in which the trial court handled this matter.

■ Appellant admits the trial court is vested with discretion to determine if reasonable grounds exist for believing a defendant is competent to stand trial. Where there has been a determination of competency to stand trial and no event or occurrence subsequent to the determination is offered to indicate a change to the trial court, he does not abuse his discretion in denying a further hearing on the subject. *Buhring v. State*, (1983) Ind., 453 N.E.2d 228. The record clearly shows the trial court gave careful and adequate consideration to the question of Defendant's competency here and, as a matter of fact, committed him for observation in the Department of Mental Health for some time. Following a report by a psychiatrist from that institution that Defendant was then competent to stand trial, the trial court ordered further examination and held an additional hearing on the subject. Those doctors then testified that the ingestion of the drug Thorazine would not be detrimental to the defendant's competency, but would be an aid to it. We agree with the State's contention that the defendant has neither shown the psychiatrists' evaluations were improper or inadequate, nor has he shown how additional testimony from Dr. Gutierrez would have materially changed matters. We accordingly find the trial court did not abuse its discretion in finding Defendant competent to stand trial.

## II

The jury found Defendant Montano to be guilty, but mentally ill, of both the crimes of murder and manslaughter. Montano now contends the jury verdict is contrary to law because he claims the evidence established that he was insane at the time of the commission of the offense.

■ It already has been firmly established that the burden of proving insanity is given to the person who interposes the defense. Ind.Code § 35–41–4–1 (Burns 1979 Repl.) *Taylor v. State*, (1982) Ind., 440 N.E.2d 1109. The defendant here, therefore, is appealing from a negative judgment. Only where the evidence is without conflict and leads unalterably to a conclusion contrary to that reached by the trier of fact will the judgment be disturbed. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216. It is unquestionable that Defendant had mental and emotional problems. In fact, he had killed his mother and niece while his mother was in the process of having him committed to a mental institution. It is well established, however, that the existence of a mental disease or deficiency does not *ipso facto* render a defendant legally insane. *Taylor, supra; Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429; *State v. Stacy*, (1980) Tenn., 601 S.W.2d 696; *People v. Ramsey*, (1979) 89 Mich. App. 468, 280 N.W.2d 565. This was also recognized by our legislature in its passage of the statute implemented here in Defendant's conviction. Ind.Code § 35–5–2–3 (Burns Repl.1979) (distinguishing insanity from mentally ill for purposes of rendering a verdict). The jury here heard both psychiatric and lay witnesses testify about Defendant's mental condition. The jury was entitled to consider both the lay and expert testimony in assessing Defendant's mental capacity at the time of the killing and was free to accept the lay testimony and reject the conclusions of the experts. *Taylor, supra; Duvall v. State*, (1981) Ind., 415 N.E.2d 718; *Morris v. State*, (1979) 270 Ind. 245, 384 N.E.2d 1022; *Thomas, supra; Price v. State*, (1980) Ind., 412 N.E.2d 783. Three expert witnesses testified here. Dr. Peter Gutierrez, a family practice physician, was unable to clearly say Defendant was either sane or insane at the time of the offense. Drs. Batacan and Wigutow testified that, in their opinion, the defendant

was insane at the time of the commission of the crime. On cross-examination, however, Dr. Batacan testified he conducted three interviews and Defendant did not speak on two of those occasions. He furthermore did not conduct any physical or mental examination of Defendant but made his decision based solely on medical records and interviews with the defendant's family plus his observations of the defendant. Dr. Batacan testified it would be important to determine the actions of a subject before, during, and after a criminal act to formulate a conclusion as to sanity. Defendant's sister, Marina Montano, testified about her observations of Defendant at the time of the commission of the crime and it was her opinion he was capable of appreciating right from wrong and conforming his conduct to requirements of the law. Her observation was that he knew he was doing wrong and was able to control himself had he wanted to do so. One of the officers coming to the home testified that the defendant told him he had killed his mother and niece and seemed to be calm and understand what he was doing. The other officer testified that he was so busy he did not really have time to make a determination as to Montano's demeanor but he observed that Montano appeared to be in shock. On further examination, he testified that he thought Montano was apprehensive due to threats from family members and neighbors because of what he had done. There was, therefore, conflict in the evidence before the jury from expert and lay witnesses as to the mental capacity or condition of Defendant at the time of the murder. Faced with this conflict the jury was free to accept or reject any of the evidence it heard from any of the witnesses. *Taylor, supra; Duvall, supra.* The jury, however, heard sufficient evidence to support its verdict of guilty but mentally ill and no grounds are presented to this Court to reverse it.

### III

Appellant claims the trial court committed reversible error by denying two separate motions for continuance. Prior to trial, Defendant orally moved for a continuance because of the absence of defense witness Dr. Peter Gutierrez. Defendant expressed the need for Dr. Gutierrez' testimony in regard to a determination of his competency to stand trial. He claimed Dr. Gutierrez would testify that he was, in fact, incompetent to stand trial. The trial court denied this motion. We already have considered Defendant's motion for an additional hearing as to his competency immediately preceding trial and found that the court acted properly in determining no additional hearing was required.

During the trial Defendant filed a motion and affidavit for a continuance due to the absence of Dr. Emilio Espanola who was in Mexico attending a funeral. Defendant contended Dr. Espanola would testify that Defendant suffered from schizophrenia and did not appreciate the wrongfulness of his conduct at the time of the offense. The trial court also denied this motion for continuance.

Ind.Code § 35–36–7–1 (Burns Supp.1983) provides for a continuance due to the absence of a witness. The statute, however, requires the defendant to file an affidavit in support of the request five days or more prior to trial. In the instance of Defendant's first request, he did not meet the statutory requirements because he made an oral motion for a continuance. Defendant is correct that a failure to file an affidavit does not absolutely preclude a defendant from obtaining a continuance. Rather, the question becomes one of whether the trial court abused its discretion by denying the continuance. *McGraw v. State,* (1981) Ind., 426 N.E.2d 1290. A specific showing of prejudice is required in order to show abuse of discretion on the part of the trial court. The trial court here properly pointed out that he had already heard the testimony of three physicians that Defendant was competent to stand trial and saw no indication that the defendant's condition changed at the commencement of the trial on May 23, 1983. No prejudice is shown to Defendant in this

regard nor any abuse of discretion by the trial court.

Whether to grant or deny a motion for continuance after trial has commenced is within the sound discretion of the trial judge and his decision will not be disturbed absent a clear showing of an abuse of discretion. *Martin v. State*, (1983) Ind., 453 N.E.2d 1001. The trial court here, in denying a motion for continuance, based on the testimony of Espandola, found that his testimony would have been cumulative since two court appointed psychiatrists were present and offered similar testimony. We, therefore, cannot say the trial court abused its discretion in denial of Defendant's second motion for continuance. No error is presented on this issue.

### IV

Appellant claims the trial court erred by admitting into evidence various photographs depicting the bodies of the victims. The photographs were represented by State's Exhibits I through VII. Defendant contends they were introduced solely to inflame the passions of the jury.

The admissibility of photographs of bodies of victims of a homicide is determined by means of relevancy. *Askew v. State*, (1982) Ind., 439 N.E.2d 1350. Photographs are relevant if they depict objects that a witness would be permitted to describe verbally. Only when a relevant photograph's tendency to inflame the passions of the jury, due to its gruesomeness, clearly outweighs its relevance is it reversible error to permit it into evidence. The fact of the gruesomeness of the photograph is not sufficient reason to require its exclusion from evidence. *Akins v. State*, (1981) Ind., 429 N.E.2d 232. Photographs of a decedent are relevant even though the cause of death had been proven through testimony of other State's witnesses. *Webster v. State*, (1981) Ind., 426 N.E.2d 1295. Although admittedly gruesome, the photographs served to elucidate and explain relevant oral testimony given at the trial by showing the nature and extent of the wounds to the victims and proving the cause of their deaths. A different angle or area was shown in each of the photographs so that there was no particular emphasis on a gruesome aspect of the scene. There was, therefore, no abuse of discretion by the trial court in admitting State's Exhibits I through VII and no reversible error was committed.

Finding no reversible error, we affirm the trial court.

GIVAN, C.J., and HUNTER, DeBRULER, and PRENTICE, JJ., concur.