David W. KING, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49A02–8805–PC–188.

Court of Appeals of Indiana,
Third District.

April 19, 1989.
Rehearing Denied May 31, 1989.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., for plaintiff-appellee.

GARRARD, Presiding Judge.

David King appeals the denial of his petition for post-conviction relief from a guilty plea and the resulting concurrent sentences of forty years for burglary, rape, robbery and criminal deviate conduct, and twenty years for confinement. We affirm.

## I. Issues

This case presents the following issues:

1. Whether King had the effective assistance of counsel;
2. Whether the trial court erred in denying King's motion for a continuance;
3. Whether King entered his guilty plea knowingly, intelligently and voluntarily; and
4. Whether a proper factual basis was established for the trial court's acceptance of King's guilty plea.

## II. Facts

On July 19, 1982, David King and two co-defendants were arrested and charged with burglary, rape, robbery, criminal deviate conduct and confinement. On July 21st, attorney Craig Turner, who was retained by King's mother to represent her son, entered his initial appearance for King.

The evidence regarding the extent to which Turner prepared King's case for trial is disputed. King contends that Turner neglected to interview potential defense witnesses at Dave and Doc's Tavern and at a Village Pantry store, as well as state's witnesses who were incarcerated in the Marion County Jail during the months preceding King's trial date. He also maintains that Turner neglected to request from the Morgan County trial court a copy of either the record of King's 1980 guilty plea or of his sentencing hearings, and that Turner also failed to file a petition for post-conviction relief in that case. Setting aside that conviction would allegedly have removed the threat of an habitual offender proceeding in this case.

The state responds that Turner did interview defense witnesses, the state's witnesses and the victim, and that he adequately investigated King's 1980 Morgan County conviction and subsequent probation violation.

David King's trial was scheduled to begin on September 22, 1982. On September 13th, the state furnished Craig Turner with forty-three discovery items, causing him to orally move for a continuance on September 14th and to file a written motion for continuance on September 17th.

The written motion stated that Turner had been unable to examine the recently received discovery materials because he had participated in complex litigation the previous week and because he was scheduled to begin another trial on the same day that King's trial was due to commence. Nonetheless, the trial court denied Turner's motion on September 20th.

On September 21st, King agreed to plead guilty in exchange for a reduced sentence and subsequently entered a guilty plea. The trial court accepted the plea and imposed sentence.

Nearly two years later, on August 3, 1984, King filed a petition for post-conviction relief, which he subsequently moved to withdraw. The motion for withdrawal was granted on February 14, 1985.

On August 18, 1986, King filed a second petition for post-conviction relief, which asserted that King had not entered his guilty plea knowingly, intelligently and voluntarily, that an adequate factual basis for that plea had not been established and that King had been deprived of the effective assistance of counsel.

On September 8, 1987, a hearing was held on King's petition. That petition was subsequently denied, whereupon King filed a motion to correct errors. After the motion was denied, King filed this appeal.

### III. Discussion and Analysis

■ King's arguments and our analyses of those arguments are as follows:

1. King was denied the effective assistance of counsel because Turner failed to: a) investigate, interview or take depositions from the state's witnesses; b) interview potential alibi and other defense witnesses; c) take notes of, record or have witnesses present at the interviews he claims to have conducted and d) investigate King's 1980 conviction in Morgan County in order to preclude the filing of an habitual offender charge against him.

In 1984, in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court articulated a two-pronged test by which claims of ineffective assistance of counsel are to be judged. The Supreme Court stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed. 2d at 693.

The following year in *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 the Court determined that the *Strickland* test also provided the standard by which ineffective assistance claims are to be judged when a guilty plea is challenged.

Quoting from *Strickland* as applicable in guilty plea cases the Court observed:

Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.... Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

The Court bolstered the necessity of showing prejudice in guilty plea cases with the fundamental interest in the finality of guilty pleas identified in *United States v. Timmreck* (1979), 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634.

The Court said that in order to satisfy the prejudice requirement "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 106 S.Ct. at 370. The Court then illustrated its meaning with the following:

For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a

failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer,* 742 F.2d 371, 375 (CA7 1984) ('It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received'). As we explained in *Strickland v. Washington, supra,* these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' 466 U.S. at 695, 104 S.Ct. at 2068.

106 S.Ct. at 370, 371.

King contends that had his attorney performed as he contends the attorney should have performed, King would have preferred to go to trial. That, of course, is an easy thing for any defendant to say once he has become dissatisfied with the consequences of his guilty plea. He has made no showing whatever of the evidence that would have been produced had the alleged deficiencies not occurred, and has therefore necessarily failed to establish the likelihood that it would have changed the result at a trial and would have led counsel to change his recommendation. *Hill, supra.*

By King's own admission, if he had gone to trial and been convicted of all counts, he faced a sentencing potential of 300 years. As the consequence of the plea bargain he was sentenced to 40 years each on the burglary, rape, robbery and deviate conduct counts and 20 years on the confinement count, with all sentences to run concurrently. He claims prejudice from counsel's failure to investigate and attempt to set aside a prior felony conviction so that habitual offender status might be avoided, but no such count was ever filed in this case.

King has not demonstrated a reasonable probability that had he proceeded to trial

represented by an attorney who was unquestionably well prepared, he would likely have been acquitted of some of the charges. On the contrary, the evidence indicates that King went to the victim's home to commit burglary and larceny and that he was present when the rape and criminal deviate conduct occurred. Moreover, it is well established that an accomplice is criminally liable for any offense committed by his confederates that was a natural and probable consequence of their common plan, even though he did not personally participate in that offense. *Kizer v. State* (1979), 271 Ind. 277, 392 N.E.2d 466; *Dozier v. State* (1976), 264 Ind. 329, 343 N.E.2d 783. Under these circumstances, even if King had gone to trial without reason to fear a possible habitual offender charge and represented by a lawyer who had prepared thoroughly, he would still have had substantial reason to fear being convicted of all the charges against him and of exposing himself to a greater penalty than he incurred through the guilty plea.

King has failed to establish his claim of error.

2. The trial court erred in failing to grant King's motion for a continuance.

■ King maintains that in rejecting his motion, the trial court abused its discretion because that rejection denied Turner an opportunity to adequately prepare for trial, thereby prejudicing King's case. According to King, it is doubtful that *any* lawyer who received forty-three items of discovery nine days prior to trial would have sufficient time in which to prepare a defense. Turner lacked adequate preparation time because in addition to receiving the discovery items before trial, he had been involved in time-consuming litigation during the week preceding King's trial date. Therefore, King contends, when the trial court denied the requested continuance, it also denied Turner a chance to adequately prepare King's defense, thereby forcing King to choose between pleading guilty and proceeding to trial with an unprepared attorney, to face a possible sentence of three-hundred years.

The state counters that the trial court acted properly in denying King's motion for a continuance. We agree with the state and therefore need not consider the further question of whether King was prejudiced in view of the fact that no trial occurred.

Indiana Trial Rules, Rule 53.4 places the granting or denial of a motion for continuance within the discretionary realm of the trial court. The court will review a trial court's decision to deny a motion for continuance only for an abuse of discretion. Granting continuances in order to allow more time for preparation is generally not favored in criminal cases and will only be granted in the furtherance of justice. *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168.

*Keys v. State* (1979), 271 Ind. 52, 390 N.E. 2d 148, 150. The trial court, in determining whether there is good cause for granting a motion for a continuance, may look to the circumstances of the case as well as the allegations of the motion. It is not required to grant the motion simply because it complies with Rule 53.4. *Hooks v. State* (1977), 266 Ind. 678, 366 N.E.2d 645. The trial court's denial of a motion for a continuance is reversible error only where the court has clearly abused its discretion. *Woods v. State* (1985), Ind., 484 N.E.2d 3; *Montano v. State* (1984), Ind., 468 N.E.2d 1042.

The trial court did not abuse its discretion in this case. Although King argues that by denying his motion, the court prevented Turner from adequately preparing King's case, Turner testified at the post-conviction relief hearing that he had worked almost exclusively on King's case during the week prior to the trial date, that many of the discovery items he received shortly before trial did not require detailed review and, therefore, that he was prepared for trial. Under these circumstances, "[King] has made absolutely no showing that a continuance was required. His sole rationale for the motion, that his attorney did not have time to prepare for trial, was contradicted by the attorney. The trial court was within its discretion in denying the motion." *Little v. State* (1986), Ind., 501 N.E.2d 447, 449.

3. King did not enter his guilty plea knowingly, intelligently and voluntarily.

King argues that Turner hoodwinked him into believing that his co-defendant Michael Arnold would testify against him, thereby convincing him that he would be sentenced to life imprisonment unless he accepted a plea agreement. This misrepresentation, according to King, coerced him into pleading guilty, thereby vitiating the voluntariness of his plea. To make matters worse, he asserts, at his guilty plea hearing the trial court failed to ask him whether he had been threatened or coerced into pleading guilty and thereby denied him an opportunity to tell the court that he was pleading guilty because his lawyer was unprepared for trial.

The evidence concerning Turner's discussions with Arnold and King about pleading guilty was conflicting. King maintains that Turner induced each defendant to plead guilty by falsely telling him that his co-defendant had agreed to plead guilty and to testify against him. In this way, King charges, Turner avoided having to go to trial unprepared. The state counters that Turner did not attempt to induce Arnold to plead guilty, but instead, as per King's prior request, informed King of Arnold's decision to plead guilty and then advised King to accept the same plea agreement that Arnold had accepted.

Where, as in this case, the evidence is disputed and, therefore, does not clearly indicate that the post-conviction court erred, we will not reverse. *Cobbs v. State* (1982), Ind., 434 N.E.2d 883; *Lindley v. State* (1981), Ind., 426 N.E.2d 398. The state presented ample evidence to convince a reasonable trier of fact that Craig Turner did not engage in conduct that vitiated the voluntariness of King's guilty plea. In fact there was evidence that King had stated throughout his representation by Turner that if Arnold ever decided to plead guilty, King would do the same.

Moreover, although the trial court did not specifically ask King whether he had been threatened or coerced into pleading guilty, it did ask him: "And are you mak-

ing this plea voluntarily and of your own free will?" King replied: "Yes, sir." Had King wanted to inform the court that Turner had pressured him into pleading guilty, he could easily have done so in response to the above question. Indeed, the court's question was the functional equivalent of the inquiry that King argues the court should have made. Its meaning was sufficiently plain as to give King a fair opportunity to tell the court that his lawyer had pressured him into pleading guilty if that had been the case. The post-conviction court acted properly in concluding that King entered his guilty plea knowingly, intelligently and voluntarily.

4. The trial court erred in finding that a factual basis existed for King's guilty plea and that King had admitted participating in the crimes with which he was charged.

King argues, first, that at the same time that he pleaded guilty to the crimes with which he was charged, he maintained that he was innocent of those crimes. He points to the statement that he furnished for the presentence report, which said:

> I was present at [the victim's] house the night of July 10, 1982. Although I am not guilty of the charges that are presented against me, I have pleaded guilty to them.

He also points to the holding of the Indiana Supreme Court that "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." *Ross v. State* (1983), Ind., 456 N.E.2d 420, 423. He notes, as well, a more recent decision of the Indiana Supreme Court stating that "[a] plea of guilty tendered by one who in the same breath protests his innocence ... is no plea at all." *Patton v. State* (1987), Ind., 517 N.E.2d 374, 375.

Secondly, King contends that he did not admit to participating in the crimes with which he was charged, but that he admitted only to being present at the scene of those crimes.

The state responds that a proper factual basis was established for the acceptance of King's plea. We agree.

IC 35–35–1–3(b) states: "The court shall not enter judgment upon a plea of guilty ... unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea." The trial court in this case met that standard.

As indicated earlier, King admitted during his guilty plea hearing and in the presentence investigation report that he went to the victim's house intending to commit burglary and larceny and that he was present in the house when the victim was raped and subjected to criminal deviate conduct by his confederates. As also indicated earlier, these facts rendered King criminally liable not only for burglary and robbery, but also for rape, criminal deviate conduct and confinement. *See Kizer v. State* (1979), 271 Ind. 277, 392 N.E.2d 466; *Dozier v. State* (1976), 264 Ind. 329, 343 N.E.2d 783. That criminal liability provided a factual basis for the acceptance of King's guilty plea.

Moreover, "[a]t the guilty plea hearing, [King] stated that he understood the elements of the crime[s] with which he was charged and that he understood that by entering his plea he was admitting the truth of the matters contained within the criminal information filed against him. Such admissions are sufficient to establish a factual basis for his plea." *Lloyd v. State* (1979), 270 Ind. 227, 383 N.E.2d 1048.

Thus, the trial court acted properly in concluding that a factual basis for the acceptance of King's guilty plea had been established.

### IV. Conclusion

We conclude that the post-conviction court properly denied David King's petition for post-conviction relief. Accordingly, we affirm the decision of the post-conviction court.

HOFFMAN and MILLER, JJ., concur.