**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**$30,440 IN U.S. CURRENCY, Defendant,**

**and**

**Jeremiah Hoskins, Claimant–Appellant.**

No. 92–55132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1993.

Decided Aug. 20, 1993.

As Amended Sept. 28, 1993.

Janet Sherman, Sherman & Sherman, Santa Monica, CA, for defendant $30,440 and appellant Jeremiah Hoskins.

Mark A. Feldman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.

NOONAN, Circuit Judge:

The United States sought the forfeiture of $30,440 in United States currency. It was opposed by claimant Jeremiah Hoskins. After trial the district court gave judgment for the United States.

Hoskins appeals. We affirm the judgment of the district court.

### FACTS

On May 8, 1990 Hoskins was hit in the head and shot at his own home. He called the paramedics and the Inglewood police were also notified. Without a search warrant the police searched the house and found what they believed to be cocaine in a package lying on top of the refrigerator. The package was marked "Ruby" and wrapped in a way characteristic in packaging kilos of cocaine. The top had been split open. There was a knife on the kitchen floor that the police believed had been used to open the package. There was a pool of blood near the knife. In the bedroom of the house the police found $7,500 in a dresser drawer and $22,940 on a shelf in the closet.

The United States moved to forfeit the cash alleging that there were reasonable grounds to believe that the cash had been used to buy drugs or would be used to buy drugs.

### PROCEEDINGS

At the first hearing of the case, on September 23, 1991, the district court inquired of counsel if he would raise the Fourth Amendment in regard to the search. The court noted that in filing his exhibit list and witness list and contention memo with points and authorities counsel had not said a word about the Fourth Amendment. Counsel observed that he had never before had a forfeiture case in the federal court. The court told him that if he was going to argue the Fourth Amendment it should be fully briefed in the

contention memo and that at present it wasn't. At the same time the court warned him that a frivolous Fourth Amendment claim would be subject to sanctions. Counsel said he would confer with his client. After doing so in the hall, counsel announced that he would go to trial on the innocence of the claimant.

The second hearing was held December 16, 1991 and counsel was again asked if he was going to contest the lawfulness of the search. He stated that he was not.

On January 14, 1992 a one-day trial was held. The government produced a police officer who had seen the package that apparently contained cocaine. It was now established that it was not cocaine but something that looked like the drug. It was the government's argument that based on the circumstantial evidence it could be inferred that Hoskins was attempting to sell "bunk" cocaine; that the knife on the kitchen floor had been used to open the package; that Hoskins' customer had detected the fraud and had shot him. The cash found in the house the government argued must be from drug transactions of Hoskins.

For his part Hoskins testified that he was in the cement finishing business but liked to gamble at the race track and at cards. Since 1985 he had reported his occupation as a gambler to the federal tax authorities. His story was that on May 8, 1990 he had met a fellow at the track whose last name he never knew, whom he invited home and started playing a card game called cotch with money. When the man lost he shot Hoskins. The cash in his bedroom he said came from his gambling and was kept there because he liked to bet. He declared that he had never engaged in drug dealing. He had never heard about the package of apparent cocaine until he was interviewed at the hospital after being shot.

Hoskins buttressed this story with testimony of a Greyhound bus driver who had known him 28 years and had seen him win $55,000 at the track; the testimony of a real estate salesman who had known him 10 years and seen him win as much as $25,000 at the track and had seen him several times in possession of $30,000 or more in cash; the testimony of the owner of a hair salon who had known him 20 years and had seen him win between $25,000 and $30,000 at the Santa Anita race track; and the testimony of a parimutuel clerk at the Santa Anita race track who testified that on occasion he had paid Hoskins winning bets at the track in excess of $10,000.

No cards were found on the only table in the house or in the house itself. No explanation was offered for their absence or for the presence of the cocaine-like package.

The court found that the government had established probable cause to seize the cash and that Hoskins had failed to prove that he was its innocent owner.

Hoskins appeals. On the appeal, with new counsel representing him, he contends that he was denied the effective assistance of counsel in the hearing. He does not challenge the findings of the district court.

### ANALYSIS

As a regular matter we will not consider on appeal an objection not raised at trial. *Jovanovich v. United States,* 813 F.2d 1035, 1037 (9th Cir.1987). However, as the ineffective assistance of counsel at trial will generally not be raised by the lawyer whose competence is questioned, we will entertain this unusual claim on this appeal. *See id.*

The Sixth Amendment provides to "the accused" the right to the assistance of counsel in "all criminal prosecutions." U.S. Const. amend. VI. Whether the Sixth Amendment right to effective assistance of counsel applies to civil forfeiture proceedings is a complex and unsettled question. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 682–83, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974); *Austin v. United States,* — U.S. ——, —— n. 4, 113 S.Ct. 2801, 2804 n. 4, 125 L.Ed.2d 488 (1993).

*Austin* was decided on June 28, 1993, too late to be the basis of an appeal in this case. Hoskins has the possibility of moving under Fed.R.Civ.Proc. 60(b) to reopen the judgment of the district court in order to argue that under *Austin* the forfeiture violated the Eighth Amendment. But *Austin* is germane also to the Sixth Amendment claim pressed by Hoskins on this appeal.

Is the forfeiture of $30,440 removed from a man's bedroom so punitive that the forfeiture

**330**

proceeding may reasonably be considered criminal? In terms of its drastic effect upon the owner of the cash it is highly punitive. A man who is nearly killed in his own house, calls for help, and ends up losing his cash hoard might well think his government was punishing him. At the same time this kind of proceeding to obtain the proceeds of drug transactions is today a garden variety forfeiture proceeding. In 1992 alone, the Government filed 5,083 civil forfeiture cases. United States Attorneys' Statistical Report for the Fiscal Year 1992, Table 20.

Here we need not decide whether the Sixth Amendment applies. Even if it did, the performance of counsel did not fall below the standards set by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983). Far from intimidating or misleading counsel, as Hoskins now argues, the court patiently outlined the forfeiture procedure and the possible defenses and urged counsel, new to this kind of case, to "hit the books." Counsel, after being advised as to his options by the court, conferred with his client and made a deliberate choice of strategies. He stuck with that choice over a four-month period during which he had ample opportunity to research the question and to ask for reconsideration if the strategy of pursuing the Fourth Amendment claim seemed a viable one, and we have no reason to doubt that he researched the issue and made the considered judgment that asserting innocence was a better tactic than pressing the Fourth Amendment issue. He chose what could have been the effective tack of not invoking the Fourth Amendment but presenting Hoskins as a honest gambler. Counsel faced difficult legal and factual issues which might bar the way to a Fourth Amendment defense. Of course he may have faced factual and evidentiary problems which we could not know about without being privy to his consultations with his client. He developed an extraordinarily good case for the gambling money theory. He was able to use credible disinterested witnesses to establish that Hoskins really did gamble and really did frequently possess tens of thousands of dollars in cash associated with gambling, not drugs. Counsel's judgment to use the gam-

bling defense on the merits and not the Fourth Amendment theory appears to have been intelligent and well-considered. Unfortunately for Hoskins, his story had holes and the court did not believe him. It is too late now to say it was incompetent for his counsel not to have chosen different tactics.

For *Strickland* to apply the trial must have involved more than the admission of illegally-obtained evidence; there must also have been fundamental unfairness in the trial so that its result was unjust. *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993); *see Kimmelman v. Morrison,* 477 U.S. 365, 396, 106 S.Ct. 2574, 2594, 91 L.Ed.2d 305 (1986) (concurring opinion). Nothing indicates such unfairness here. Hoskins was able to present his basic story of why he had the stash of cash. He was not believed. He is not now entitled to the help the exclusionary rule would bestow upon him. *Id.*

**AFFIRMED.**