24 F.3d 244
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Kenneth A. BIANCHI, Petitioner-Appellant,
v.
James BLODGETT, Superintendent Washington State
Penitentiary, a division of the Department of
Corrections; Department of Corrections
of the State of Washington,
Respondents-Appellees.
 No. 93-35524.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 2, 1994.
Decided May 6, 1994.
 
 Before: WRIGHT, SCHROEDER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ken Bianchi filed a pro se habeas petition challenging his murder convictions. He argues that his 1979 guilty plea was coerced by hypnotic manipulation and that his attorney was ineffective. The district court denied his petition. We affirm.
 
 A. INVOLUNTARY GUILTY PLEA
 
 3
 A guilty plea must be voluntary and uncoerced. Iaea v. Sunn, 800 F.2d 861, 866 & 868 n. 7 (9th Cir.1986) (citing Brady v. United States, 397 U.S. 742, 748-50 (1970)). Coercion is judged by an objective standard, Iaea, 800 F.2d at 868 n. 7, looking at the "totality of the circumstances surrounding the plea." United States v. Anderson, 993 F.2d 1435, 1437 (9th Cir.1993). We review de novo the conclusion that a plea was uncoerced. Id.
 
 
 4
 Bianchi claims that he "naturally" pleaded guilty after he studied the police reports and photos, and false memories of the crime were "planted" by hypnotic suggestion. But the totality of the circumstances surrounding his plea indicate that he pleaded guilty to avoid the death penalty.
 
 
 5
 It is not clear that he was ever hypnotized. One of the six psychologists who examined him in 1979, a recognized expert on hypnosis, thought that he was faking his trances. Even assuming that he was hypnotized, there is no proof anywhere in the record that his memories of the murders were engineered by hypnotic suggestion.
 
 
 6
 The sequence of events indicates that he pleaded with a deliberate purpose. The state's case against him was strong, and prosecutors were asking for the death penalty. He changed his plea to not guilty by reason of insanity and, after four of the examining psychologists concluded that he was insane when he committed the crimes, both California and Washington agreed to a non-capital plea agreement.
 
 
 7
 Nor can he argue that he did not understand the consequences of his plea. All of the examining psychologists concluded that he was competent at the time of the plea. And accepting his own guilt by studying the police reports and photos was not an act of external coercion, but an exercise of internal reason.
 
 B. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 8
 Bianchi must show (a) that his attorney's performance was outside the range of professionally competent assistance and (b) that he was actually prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 & 697 (1984) (courts should decide issue on prejudice when possible). He must show that it is "reasonably probable" that, but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (prejudice prong of Strickland serves strong interest of finality of guilty pleas).
 
 
 9
 We reject his multifarious claims of ineffective assistance. He has not shown that he was prejudiced.[1] The strong evidence that he committed the murders makes it improbable that he would have elected to go to trial. None of the "new evidence" he claims that his attorney should have found exonerates him. Evidence supposedly discrediting key witnesses is of trivial impeachment value.[2] And the remaining evidence of his guilt is substantial.
 
 
 10
 He lied to the police about his whereabouts on the night of the Bellingham murders. He lied to the police and several witnesses about knowing one of the victims. A coat belonging to the other victim was found a few feet from where he was arrested. The victims told several persons that Bianchi had hired them for a house-sitting job on the night they were killed. He made and executed elaborate cover plans to ensure that no one else from Whatcom Security, his employer, was in the area where the bodies were found. Witnesses saw a man fitting Bianchi's description driving a truck belonging to Whatcom Security in the area at the time the girls were killed. And he confessed to six psychologists.
 
 
 11
 Nor were his attorney's alleged breaches of confidence and failures to appeal his bail, appeal the denial of his change of venue request, recuse the trial judge, and raise various Fourth Amendment claims,[3] harbingers of ineffectiveness. These alleged failures were mooted by his insanity plea.
 
 
 12
 "Viewed as of the time of counsel's conduct," Strickland, 466 U.S. at 690, urging Bianchi to forego an actual innocence defense and attendant procedural tactics in favor of an insanity defense was reasonable and competent. Cf. United States v. $30,440 In U.S. Currency, 2 F.3d 328, 330 (9th Cir.1993) (bypassing 4th Amendment illegal search strategy in favor of innocent-owner defense to forfeiture action not incompetent). The ultimate recommendation that he plead guilty to avoid a death sentence was also well within the range of acceptable professional assistance. See United States v. Vincent, 758 F.2d 379, 381 (9th Cir.1985) (attorney must "exercise the skill, judgment or diligence of a reasonably competent attorney.").[4]
 
 
 13
 There is little more that his attorney could have done to stem the tide of pre-trial publicity. The capture and trial of the Hillside Strangler was a media event. His attorney objected to cameras in the courtroom and secured court orders forbidding the psychologists from speaking to members of the press. And the diary leaks he complaints of helped, rather than hurt, his insanity defense.
 
 
 14
 The district court's denial of Bianchi's petition is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although Bianchi would like to retry his case, a hearing is unnecessary to determine prejudice. The unchallenged facts of his guilt are amply supported by the affidavit of Captain Duane Schenck of the Bellingham Police and the testimony at the sentencing hearing
 
 
 [2]
 Bianchi argued for the first time in his habeas petition that the police planted his hairs on the victims' bodies. The district court dismissed as moot the state's objection to this claim as unexhausted. We affirm. In light of the other evidence of Bianchi's guilt in this case, knowledge that Bianchi had been required to produce two hair samples would not have changed trial counsel's advice to Bianchi to enter the plea that may have saved his life. See Hockett v. Duckworth, 999 F.2d 1160 (7th Cir.1993)
 
 
 [3]
 Bianchi is precluded from directly challenging the alleged Fourth Amendment violations. See Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir.) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations) (quoting Tullett v. Henderson, 411 U.S. 258, 267 (1973)), cert. denied, 474 U.S. 981 (1985)
 
 
 [4]
 At the sentencing hearing, his attorney indicated that the reason for recommending the plea was twofold:
 Number one, a realistic appraisal of a probable outcome of a jury trial. In pleading insanity, you necessarily admit the commission of the offense, and I am concerned that on a jury, probably late at night somebody is going to lean back in their chair and say, I don't care how many psychiatrists say he's insane, he killed 12 women, and I think he should hang. We have to take that possibility into account.
 Secondly, even if we win, he would only get an indeterminate term in Western State Hospital, an institution only recently to receive accreditation, and one which has no treatment facility for him.
 Cf. North Carolina v. Alford, 400 U.S. 25, 36 (1970) ("the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence.").