STATE of Indiana, Appellant–
Respondent,

v.

Gregory VAN CLEAVE,
Appellee–Petitioner.

No. 49S00–9008–PD–541.

Supreme Court of Indiana.

Dec. 19, 1996.

Pamela Carter, Attorney General, Geoff Davis, Deputy Attorney General, Office of Attorney General, Indianapolis, for appellant–respondent.

Susan K. Carpenter, Public Defender, Thomas C. Hinesley, Joseph M. Cleary, Kenneth L. Bird, Office of the Public Defender, Indianapolis, for appellee–petitioner.

BOEHM, Justice.

The State appeals from a grant of postconviction relief to defendant Gregory Van Cleave. The postconviction court vacated Van Cleave's 1983 guilty plea for felony murder and the accompanying death sentence on the ground that Van Cleave had been denied his constitutional right to effective assistance of counsel. The State appeals only the reversal of the conviction. As explained below, we hold today that a defendant must demonstrate a reasonable probability of acquittal at trial to establish the "prejudice" from counsel's performance necessary to vacate a conviction resulting from a guilty plea. Because Van Cleave has failed to make this showing, we reinstate his felony murder conviction and remand for a new sentencing hearing.

## I. Factual & Procedural Background

On the night of October 19, 1982 Van Cleave, James Brazelton, Robert Coleman, and Andrew Sims set out to commit a robbery. The four men were driving through a neighborhood in Indianapolis in Coleman's car when they spotted Robert Falkner caulking a window outside his home. Falkner had his television, which was visible to the four men, set up in his yard to watch the World Series as he worked. Van Cleave and Sims "hollered" for Coleman to stop the car so that the four could steal the television. While their two confederates waited in the bushes nearby, Van Cleave and Sims approached Falkner to demand the television. Van Cleave was carrying a sawed-off shotgun and Sims was carrying a handgun. Both guns were loaded. After a brief exchange of words between Falkner and the two men, Van Cleave shot Falkner at close range. Falkner later died of a single gunshot wound to the chest. Van Cleave, Sims, Brazelton, and Coleman fled the scene in Coleman's car without taking the television. All four were arrested in connection with the killing four days later. Each defendant gave a statement to the police.

On October 25, 1982 the State charged Van Cleave with felony murder and conspiracy to commit robbery. In accordance with a plea agreement, Van Cleave pleaded guilty on

April 13, 1983 to felony murder and the State dismissed the conspiracy charge. Under the plea agreement, the sentencing judge could choose between 60 years in prison or the death penalty. After a lengthy sentencing hearing in which both sides presented evidence and cross-examined witnesses, the trial court issued findings of fact and a judgment dated May 27, 1983 entering a conviction and sentencing Van Cleave to death. We affirmed Van Cleave's conviction and death sentence on direct appeal. The facts and circumstances that led to Van Cleave's guilty plea are presented at some length in *Van Cleave v. State*, 517 N.E.2d 356, 359–63 (Ind. 1987), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989).

Van Cleave filed a petition for postconviction relief on August 24, 1989, asserting that he had been denied his Sixth Amendment right to effective assistance of counsel. Van Cleave contended—and the postconviction court agreed—that his trial lawyer failed to uncover relevant evidence that, if discovered, would have caused Van Cleave to go to trial instead of entering a plea. The uninvestigated evidence related to difficulties in Van Cleave's childhood, including his parents' divorce and racial issues in his upbringing, and a nonverbal learning disorder that impaired Van Cleave's ability to understand visual, spatial, mathematical, and mechanical tasks. Additionally, counsel failed to view Van Cleave's videotaped statement to the police (in which Van Cleave confessed to shooting Falkner) before the plea hearing. The postconviction court further found that counsel had failed to scrutinize the strength and consistency of the State's evidence, particularly the credibility of some of the State's witnesses. Finally, Van Cleave's attorney did not investigate the viability of an intoxication defense.

In addition to failing to pursue these lines of inquiry, counsel misapprehended the mens rea necessary for Van Cleave to be eligible for the death penalty. Counsel wrongly believed that an aggravating factor in the death penalty statute [1] was triggered only by specific intent. Thus, counsel concluded that if Van Cleave pleaded guilty and demonstrated lack of premeditation, he would be spared execution. On postconviction review, counsel testified that the intent issue was a "key factor" in his decision to advise Van Cleave to plead guilty. Counsel further testified that had he been aware of all the evidence presented on postconviction review, he would have recommended that Van Cleave reject the plea offer and go to trial.

The postconviction court concluded that to prevail on a claim of ineffective assistance Van Cleave must show that his lawyer's performance was deficient and, but for counsel's errors, Van Cleave would not have pleaded guilty. After finding that counsel's mistakes constituted deficient performance, and that Van Cleave would have gone to trial had his lawyer not erred, the postconviction court ruled that Van Cleave had established a violation of his Sixth Amendment right to effective assistance of counsel. The court issued findings of fact and conclusions of law on November 22, 1994 vacating the guilty plea, conviction and death sentence. The State appeals.

## II. Standard of Review

As we recently explained in *Spranger v. State*, 650 N.E.2d 1117 (Ind.1995), *reh'g denied*, the standard of review of a judgment granting postconviction relief is governed by Indiana Trial Rule 52(A), which is slightly different from its federal counterpart in referring to the "findings or judgment" as opposed to "findings of fact" as subject to a clearly erroneous standard of review. However, under Rule 52(A) the ultimate analysis is the same: "We reverse only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that mistake has been made." *Id.* at 1119. In reviewing a finding of ineffective assistance, we substantially defer under the "clear

---

1. IND.CODE § 35–50–2–9(b)(1) (1982) listed as a death penalty aggravating factor "intentionally killing the victim while committing or attempting to commit" any of several listed crimes, including robbery. As the postconviction court concluded, the requisite mens rea to satisfy this factor is only general intent to kill. The language of this factor is substantively unchanged from its text 13 years ago when Van Cleave was sentenced in this case. *See now* IND.CODE § 35–50–2–9(b)(1) (1993 & Supp.1994).

error" standard to the trial court's findings of fact but not to its conclusions of law.[2] A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact. *Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc.*, 575 N.E.2d 303, 306 & n. 1 (Ind.Ct.App.1991), *trans. denied.*

### III. Issue Presented

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show two things: (1) the lawyer's performance fell below an "objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Effectiveness of counsel is a mixed question of law and fact. *Id.* at 698, 104 S.Ct. at 2070. At issue in this case is the second tier of this analysis—the "prejudice" prong.[3] The question we decide today is one of first impression in Indiana: what must be proved to establish prejudice in claims of ineffective assistance where the defendant has pleaded guilty rather than gone to trial? Specifically, the issue is whether it is sufficient to set aside a conviction if the postconviction court concludes that there is a reasonable probability the defendant would not have pleaded guilty but for the deficient performance, or must the defendant establish a reasonable probability that the ultimate result—conviction—would have been different had counsel met the reasonableness standard.

We conclude that the showing of prejudice necessary to establish a constitutional claim requires that Van Cleave have shown a reasonable probability that he would not have been convicted at trial. In light of the lack of any evidence negating Van Cleave's culpability for felony murder and overwhelming evidence confirming it, we conclude Van Cleave has not shown a reasonable probability he would have been acquitted at trial, and therefore he has not shown any prejudice due to his lawyer's performance leading to his guilty plea. For this reason, the postconviction court erred as a matter of law in setting Van Cleave's conviction aside.

### IV. U.S. Supreme Court Decisions in *Strickland* & *Hill*

It is clear that the necessary showing of prejudice in Sixth Amendment cases is not definitively settled.[4] In *Strickland*, the Supreme Court established the two-part test for relief based on a violation of the right to

---

**2.** This standard of review for ineffective assistance mirrors the federal standard employed on habeas corpus review. *See, e.g., United States v. Quintero–Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995); *Sloan v. Delo*, 54 F.3d 1371, 1383 (8th Cir.1995); *Brecheen v. Reynolds*, 41 F.3d 1343, 1365–66 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995); *Scarpa v. Dubois*, 38 F.3d 1, 9 (1st Cir.1994); *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir.1994).

**3.** Van Cleave asserts, and the postconviction court found, that Van Cleave's trial and appellate counsel did not perform at an objectively reasonable level. For purposes of our analysis we assume without deciding that Van Cleave's attorneys did perform deficiently. We need not reach that issue, however, because we dispose of Van Cleave's ineffectiveness claim under the preju-

dice prong of *Strickland*. The U.S. Supreme Court indicated in *Strickland* that this is the preferred approach because it avoids the often nettlesome question of whether the attorney's performance was objectively unreasonable. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed").

**4.** *See In Re Avena*, 12 Cal.4th 694, 49 Cal.Rptr.2d 413, 429 n. 5, 909 P.2d 1017, 1033 n. 5 (1996) (noting issue but not deciding whether *Lockhart v. Fretwell*, discussed infra, altered *Strickland*'s definition of prejudice); *State v. Sanchez*, 140 N.H. 162, 663 A.2d 629, 630 (1995) (concluding that *Fretwell* "refined" prejudice prong, but not addressing scope of change on ground that defendant failed to meet pre-*Fretwell* outcome-determinative test).

effective assistance of counsel held applicable to the states under the Fourteenth Amendment.[5] Under *Strickland,* the defendant must show deficient attorney performance and resulting prejudice. *Strickland* dealt with ineffectiveness claims that related only to sentencing but discussed the issue as it related to the trial as a whole. The Court reasoned that the purpose of the Counsel Clause is to ensure a fair trial and to protect the adversary process. *Id.* at 685–86, 104 S.Ct. at 2063–64. Courts are to focus on whether the trial produced a just result. *Id.* *Strickland* defined prejudice in the context of a trial as follows: "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69.

One year after *Strickland,* the Court in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) unanimously held that *Strickland*'s analysis applies equally to cases resolved by a guilty plea. In *Hill,* the Court stated that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370. This language from *Hill,* standing alone, suggests that prejudice is a function of the outcome of the plea proceedings, i.e., if the defendant would not have pleaded guilty but for the attorney's shortcomings, the prejudice prong of *Strickland* is satisfied. Consistent with this view, some courts adjudicating ineffective assistance claims after *Hill,* including the postconviction court in this case, focused solely on the guilty plea and did not attempt to explore whether the defendant would have been convicted at trial. In Van Cleave's case, the postconviction court concluded that but for the subpar professional performance of his trial counsel, there is a reasonable probability Van Cleave would have gone to trial. That factual determination is not clearly erroneous, and if this reading of *Hill* were controlling, it would be dispositive here.

*Hill* itself is not entirely clear on this point, however. In addition to the language already quoted, the Court also observed that "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* The Court quoted with approval the following language from *Evans v. Meyer,* 742 F.2d 371, 375 (7th Cir.1984): "It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received" (quoted in *Hill,* 474 U.S. at 59, 106 S.Ct. at 371). Thus, *Hill* also contains language suggesting that the decision to plead could be equated with an assessment of the probable result of a trial.[6] That is, if the evidence or affirmative defenses the lawyer should have uncovered or presented would likely have led to an acquittal, then it was reasonable to infer that the defendant would not have pleaded guilty; conversely, if the defenses would have failed, a guilty plea notwithstanding counsel's performance could be expected. As explained below, some courts have extracted this line of reasoning from *Hill.* However, to the extent *Hill* can be read to turn on the proposition that defendants will plead guilty if, and only if, they assess a conviction at trial as likely, *Hill* reasoned from a premise that we believe is questionable. Indeed, a defendant's conclusion that success is remotely possible, if not likely, is sufficient to induce many to go trial. However, subsequent authority leads to the conclusion that a claim of ineffective assistance of counsel does entail a showing of reasonable probability of a better result at trial, if not for precisely the reason suggested by this reading of *Hill.*

### V. *Lockhart v. Fretwell:* Clarifying the Prejudice Prong

In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) Fretwell

---

5. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

6. Further support for this view is found in another case cited with approval in *Hill. Mitchell v. Scully,* 746 F.2d 951, 954–55 (2d Cir.1984), *cert.*

denied, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985) held that the defendant could not show prejudice because evidence of guilt was overwhelming and conviction the most likely outcome had a trial taken place.

had been convicted of felony murder by a state jury in Arkansas and sentenced to death. On habeas corpus review, Fretwell alleged that his counsel had been ineffective for failure to object to a jury instruction during the sentencing phase. The objection that the lawyer could have made was valid at the time of trial under a decision of the federal court of appeals for that circuit. However, the decision had been overruled in that circuit by the time Fretwell's habeas case reached the U.S. Supreme Court. Writing for a 7–2 majority, Chief Justice Rehnquist held that the lawyer's failure to raise the once viable but now invalid point did not constitute "prejudice" within the meaning of *Strickland*'s test for ineffective assistance of counsel. *Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844.

*Fretwell* enabled the Supreme Court to elaborate on the prejudice that must be shown to prevail on a claim of ineffective assistance of counsel: "[A]n analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id.* at 369, 113 S.Ct. at 842. *Fretwell* did not explain how the "unfairness" requirement affected *Strickland*'s outcome-determinative test, other than to say that "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* at 369–70, 113 S.Ct. at 842–43. Thus, under *Fretwell* a different outcome at the plea stage but for counsel's errors is constitutionally insignificant if the ultimate result that was reached was neither unfair nor unreliable. Otherwise stated, prejudice requires more than the hope for acquittal by error.

*Fretwell* involved a challenge to a sentence and did not address the guilt or innocence of the accused. However, for three reasons we conclude that the "unfairness" or "unreliability" requirement discussed in *Fretwell* applies to the conviction stage as well. First, the Court squarely held in *Hill* that *Strickland*'s two-part test for ineffective assistance also governs convictions based on a plea. It follows that any clarification of *Strickland* applies equally to the guilty plea setting. Second, *Fretwell* stated that the "*conviction* or sentence" is not unconstitutional unless the result was unfair or unreliable. *Id.* (emphasis added). Finally, federal courts of appeals have applied *Fretwell* in evaluating convictions based on trials.[7]

## VI. Post-*Fretwell* Authority

The Supreme Court has not elaborated on the implications of *Fretwell* for a conviction based on a guilty plea, and only a few federal courts of appeals and state supreme courts have addressed this question. The handful of courts who have faced the matter, however, have ultimately arrived at a "reasonable probability of acquittal" standard, or its functional equivalent. Most recently, in *Jones v. Page*, 76 F.3d 831 (7th Cir.1996) the Seventh Circuit held that no *Strickland* prejudice resulted from a failure to pursue an insanity defense. The defendant had pleaded guilty to three counts of murder in an Illinois state court and was sentenced to death. *Id.* at 834. On federal habeas review, the defendant asserted that his lawyer had been constitutionally ineffective for failing to request a complete psychological evaluation, which in turn would have been the basis for an insanity defense. *Id.* at 841. After concluding that the lawyer's advice to plead guilty would have been no different even if the psychological evaluation been done before the plea hearing, the Seventh Circuit held: "Had

---

7. Most of these cases found that prejudice had not been proved because: (1) evidence of guilt was overwhelming; and (2) no jury would have acquitted even if counsel had been more adept. *See, e.g., Flamer v. State of Delaware*, 68 F.3d 710, 730 (3d Cir.1995); *Scarpa*, 38 F.3d at 16; *Battle v. Delo*, 19 F.3d 1547, 1556 (8th Cir.1994); *United States v. Holland*, 992 F.2d 687, 691 (7th Cir.1993); *Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir.1993); *United States v. Kellum*, 42 F.3d 1087, 1096 (7th Cir.1994). *See also United States v. $30,440 in U.S. Currency*, 2 F.3d 328 (9th Cir.1993) (assuming ineffectiveness claim could be brought in civil forfeiture proceeding but holding that no *Fretwell* prejudice was shown); *In Re Avena*, 49 Cal.Rptr.2d at 429 n. 5, 909 P.2d at 1033 n. 5 (assuming *Fretwell* applied to trial stage but holding that defendant could not prove prejudice because conviction and sentence would have been same even absent counsel's errors).

Jones ignored that advice and gone to trial, the outcome most likely would have been the same, in light of the overwhelming evidence of guilt.... [F]ailure to pursue an insanity defense therefore did not result in prejudice, much less a fundamentally unfair or unreliable result[.]" *Id.* at 843–44 (citing *Fretwell*) (internal quotation marks & footnote omitted).

Other federal courts appear to read *Hill* and *Fretwell* as turning on whether the defendant would have pleaded guilty, but hinging that determination on an assessment of the outcome of a trial. These courts reasoned that because the defendant could expect a harsher sentence after trial than was available through a plea bargain, a guilty plea even with effective counsel could be inferred from strong evidence of guilt. *Armstead v. Scott,* 37 F.3d 202 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995) is one of two Fifth Circuit decisions reasoning along these lines. In that case, the court concluded that the defendant would have pleaded guilty despite his lawyer's deficient performance, because evidence of guilt was overwhelming and the plea bargain provided for a substantially reduced sentence compared to what the defendant might have received had he gone to trial. *Id.* at 210–11. Although the Fifth Circuit relied primarily on the *Hill* test, the court also concluded that the defendant failed to meet the "appreciable" showing of prejudice required under *Fretwell. Id.* at 211. Similarly, in *Mangum v. Hargett,* 67 F.3d 80 (5th Cir.1995) the defendant failed to show prejudice because had he gone to trial and been convicted "he would surely live out the rest of his days in prison." *Id.* at 86 (citing *Armstead*). Under this analysis, however, prejudice would seem to turn on an evaluation of the degree of leniency available to the defendant under the plea bargain. We agree with the dissent in *Evans* that these matters are simply too speculative to be confidently undertaken. A more manageable and ulti-mately fairer test is to require an objective showing of reasonable probability of success at trial. Although *Armstead* and *Mangum* did not reason from *Fretwell* in the manner we do here, in each case the court ultimately relied on the likelihood of conviction in finding no *Fretwell* prejudice and the practical result is the same.

■ Yet a third analytical framework is provided by *Copas v. Commissioner of Correction,* 234 Conn. 139, 662 A.2d 718 (1995), where the Connecticut Supreme Court addressed the proper prejudice standard for guilty pleas after *Fretwell. Copas* concluded that *Hill* required a showing that the defendant would have gone to trial "on the basis of the likelihood that his defenses would succeed in providing a more favorable outcome." *Id.* 662 A.2d at 726 n. 10. Under that view, *Fretwell* did not affect the prejudice requirement in a guilty plea setting. *Copas* interpreted *Hill* to require that the defendant show "the defense that was not discovered or explained to him during the plea process would have likely resulted in ... an acquittal." *Id.* at 729 n. 18. *Copas* relied primarily on its reading of *Hill* that courts adjudicating ineffective assistance claims look to the outcome of a possible trial in ascertaining whether the defendant would have changed his plea. As already noted, in our view *Hill*'s reference to the outcome of a possible trial was not put so strongly that we can confidently extract from that case the "reasonable probability" requirement we hold is required under *Fretwell.* Indeed, various courts have read *Hill* in different ways for precisely this reason. However, in the end, *Copas* also comes to the same result as we do. We conclude that to the extent *Hill* does not require a defendant to show a reasonable probability of acquittal to prove prejudice in the ineffective assistance context, *Fretwell* requires that showing.[8] Otherwise stated, to show prejudice after a guilty plea—i.e., to establish that a conviction was unfair or unreliable—the defendant must establish a rea-

8. Shortly after *Fretwell* was decided, the U.S. Court of Appeals for the Seventh Circuit concluded that *Fretwell,* in elaborating on *Strickland's* requirement of a showing of unfairness or unreliability, "rejected the equation between causation and prejudice." *Durrive v. United States,* 4 F.3d 548, 550–51 (7th Cir.1993). *Durrive* dealt with a collateral attack on the sentence and found that prejudice demanded a showing that a "significant" reduction in the sentence would have resulted from correction of counsel's errors.

sonable probability that the trial would not have resulted in that conviction.

Although we are ultimately guided by federal law on the prejudice question, our holding is consistent with prior Indiana cases (both before and after *Fretwell*) on ineffective assistance of counsel. For example, in *King v. State*, 537 N.E.2d 503 (Ind.Ct.App. 1989), *trans. denied*, the Court of Appeals rejected a claim of ineffective assistance in the guilty plea setting, reasoning that the defendant failed to demonstrate "a reasonable probability that had he proceeded to trial represented by an attorney who was unquestionably well prepared, he would likely have been acquitted of some of the charges." *Id.* at 506. In discussing the *Strickland* test in *Mftari v. State*, 537 N.E.2d 469 (Ind.1989), we presaged *Fretwell* when we stated that in addition to deficient performance by counsel, the "defendant must further show a reasonable probability that it altered the outcome of the case." *Id.* at 473. Finally, shortly after *Fretwell* was handed down we reiterated this view in *Powers v. State*, 617 N.E.2d 545 (Ind.1993), *reh'g denied*, where we held that the defendant had not been prejudiced by his attorney's errors because the outcome there—a habitual offender finding—would have been the same.[9] In short, the requirement that Van Cleave show a reasonable probability of acquittal to prove prejudice is consistent with Indiana cases on ineffective assistance and with *Fretwell*'s interpretation in other jurisdictions.[10]

## VII. Rationale for Showing of a Reasonable Probability of Success at Trial

We believe there are sound reasons to require that a defendant show a reasonable

probability of acquittal in order to prevail in a postconviction attack based on a claim of ineffective assistance of counsel. All criminal defendants, if they so choose, of course have the right to force the prosecution to prove every element of its case to the satisfaction of a jury. And the failure to prove any element, whether by lawyerly ineptitude or sheer disbelief on the part of the jury, results in an acquittal that is final. However, the constitutional calculus shifts when a person who has already been convicted challenges that conviction. On collateral attack, the privilege the Bill of Rights accords to go before a jury and seek an unreviewable acquittal, even in the face of overwhelming incriminating evidence, no longer exists. *Strickland*, 466 U.S. at 694–95, 104 S.Ct. at 2068–69.

As the Supreme Court emphasized in *Hill*, the prejudice requirement derives from the significant State interest in finality of judgments. *Hill*, 474 U.S. at 58, 106 S.Ct. at 370. If there were no such requirement, convictions would often, if not always, be followed by a second trial to evaluate the attorney's competence. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. This concern for finality is equally great in cases resolved at the plea stage because the vast majority of criminal prosecutions never go to trial; indeed nearly ninety percent of felony convictions in Indiana last year were resolved based on a guilty plea or admission. 1995 INDIANA JUDICIAL REPORT 74–77 (Vol.I). A guilty plea is required to be voluntary and intelligent not only because of the defendant's right to due process of law. The State also has a strong interest in ensuring that guilty pleas are

---

**9.** Last year in *Butler v. State*, 658 N.E.2d 72 (Ind.1995) we rejected a claim of ineffective assistance in a case resolved at the plea stage. That decision did not afford us an opportunity to address the issue before us today—the prejudice prong—because in *Butler* we upheld the trial court's conclusion that the attorney's performance had not been deficient.

**10.** The supreme courts of South Dakota and Utah have dealt with in habeas proceedings the prejudice issue following convictions based on guilty pleas. In *Hopfinger v. Leapley*, 511 N.W.2d 845 (S.D.1994), the South Dakota Supreme Court applied *Fretwell* to the plea stage

and found the guilty plea reliable. In *Parsons v. Barnes*, 871 P.2d 516 (Utah 1994), *cert. denied*, 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994), the Utah Supreme Court discussed only *Hill* in rejecting an ineffectiveness claim on the ground that the defendant had never challenged guilt and showed no inclination to go to trial. In a California Supreme Court decision not involving a guilty plea, one justice concurred specially to express the view that *Fretwell* is limited to its facts and that courts should wait for further explication from the U.S. Supreme Court before "suggesting a transmutation" of *Strickland*. *In Re Avena*, 49 Cal.Rptr.2d at 440–41, 909 P.2d at 1044–45 (Arabian, J., concurring).

reliable; the greater the procedural safeguards at the trial stage, the more likely the plea will stand if challenged later. To reinforce this point, Indiana amended its criminal statutes in 1973 to require the courts to establish a factual basis for a guilty plea before it will be accepted—a requirement imposed by Indiana courts even before that time. IND.CODE § 35–35–1–3(b) (1993).

The government also has its own interest in affording criminal defendants their constitutional right to a speedy trial. A guilty plea, by definition, eliminates the trial. Proof years after the event (in this case, 14 years and counting) can be difficult, in some cases impossible to establish. The passage of time takes its toll on evidence: witnesses die or move elsewhere, evidence becomes stale, and memories fade.[11] We do not believe the Sixth Amendment requires the State to cobble together the same evidence years after the fact if the defendant has not shown a reasonable probability that a conviction would not have resulted the first time around.[12]

Demonstrating prejudice seems particularly appropriate in the context of a claim of ineffective assistance by a defendant who has pleaded guilty. The guilty plea, virtually uniquely among all procedural steps, involves the judgment of the defendant as well as his attorney. We recognize, as the postconviction court found here, that the decision to plead is often strongly if not overwhelmingly influenced by the attorney's advice. But it is equally true that the defendant appreciates the significance of the plea and is uniquely able to evaluate its factual accuracy. The requirement that the court satisfy itself as to the factual basis for the plea is designed to ensure that only guilty defendants plead guilty, and also that the defendant's decision to waive a jury trial is an informed and reflective one. Many decisions at trial—calling a given witness, asserting a defense, or the extent of cross-examination—are difficult if not impossible for the defendant to make,

and reliance on counsel is unavoidable. In contrast, the decision whether to plead guilty is ultimately the prerogative of the defendant, and the defendant alone. More than conjecture or hope for a lucky break at trial should be required to upset that action years later. The Supreme Court has often reminded us that "in judging prejudice and the likelihood of a different outcome, [a] defendant has no entitlement to the luck of a lawless decisionmaker." *Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986) (citing *Strickland* ) (internal quotation marks omitted). Today's decision hews to this directive.

The assessment whether a defendant has shown a reasonable probability of acquittal will necessarily vary based on the facts of the particular case. As the Supreme Court has stated, "these predictions of the outcome of a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker." *Hill,* 474 U.S. at 59–60, 106 S.Ct. at 371 (citing *Strickland* ) (internal quotation marks omitted). In some instances, the defendant may be able to establish the required doubt by simply calling the reviewing court's attention to one of a number of factors—possible examples are lack of incriminating evidence in the record, conflicting credible testimony on a critical issue, or serious uncertainty as to the reliability of a confession. There are no doubt many other factors. We also recognize the record may be insufficiently developed in some cases to draw any conclusion as to culpability. This concern was the focus of the dissent in *Evans:* predicting the outcome of a trial that never happened was deemed an exercise in "unguided speculation" because the record can be too sparsely developed to permit a fully informed inquiry. *Evans,* 742 F.2d at 380 (Cudahy, J., dissenting). However, the issue is not predicting a trial outcome, but rather whether the defendant has carried the burden of showing a reasonable probability of a different result. And

---

**11.** In this case James Brazelton, an important witness for the State at the sentencing hearing 13 years ago, could not be located to testify in Van Cleave's postconviction proceedings.

**12.** *Cf. People v. Pickens,* 446 Mich. 298, 521 N.W.2d 797, 809–10 (1994) (citing state interest in finality of judgments in holding that Michigan Constitution's guarantee of effective assistance is not more protective than Sixth Amendment analog).

the *Evans* dissent's categorical refusal to engage in "trial speculation" was implicitly rejected in *Hill.*[13] In sum, requiring the defendant in a postconviction attack to establish a reasonable probability of success strikes a reasonable balance between the State's interest in finality and the need to give a full and fair hearing to claims of deprivation of effective assistance of counsel.

### VIII. Van Cleave Has Not Shown *Fretwell* Prejudice

■ We next must resolve whether Van Cleave's conviction was a fundamentally unfair or unreliable result. It is clear that no unfairness occurs when a defendant is deprived of the "luck of a lawless decisionmaker." *Fretwell,* 506 U.S. at 370, 113 S.Ct. at 843 (citing *Strickland* ). In other words, defendants who have pleaded guilty do not have a Sixth Amendment right to get to a jury in the hope it will make an error in their favor. *Hill,* 474 U.S. at 58–60, 106 S.Ct. at 370–71. Here we must evaluate whether there is a showing of a reasonable probability that an acquittal would result from a trial that did not take place, not simply a willingness to go to trial but for counsel's mistakes.

#### A. *Intoxication was not a defense available to Van Cleave.*

■ The only factor identified by the postconviction court as a result of counsel's shortcomings that points remotely towards acquittal—as opposed to mitigating the sentence—was the possibility of an intoxication defense. However, any claim that Van Cleave's lawyer erred by not investigating this aspect of the case must fail because voluntary intoxication was not a defense to either murder or robbery between 1980–84. Consequently, that defense would have been unavailable to Van Cleave at the time he pleaded guilty. Intoxication as a defense has endured an unsteady evolution in Indiana law.[14] Before Septem-

ber 1, 1980 intoxication was a defense to any crime only to the extent it negated specific intent. IND.CODE § 35–41–3–5(b) (Supp. 1979). Courts accordingly struggled to determine which offenses required a "specific intent." In 1980 the Indiana Legislature attempted to take this issue out of the hands of the courts by revising the statute that permits voluntary intoxication to be asserted as a defense. That amendment limited the intoxication defense to those offenses specifically defined by use of the phrases "with intent to" or "with the intention to" and no others. *See* 1980 Ind. Acts, P.L. 205, § 1 (effective September 1, 1980), *codified at* IND. CODE § 35–41–3–5(b) (1993).

We concluded in *Poe v. State,* 445 N.E.2d 94, 98 (Ind.1983), an arson case, that the Legislature meant what it said when it confined the intoxication defense to those crimes that were defined by the talismanic phrases required by the revised statute. And in *Sills v. State,* 463 N.E.2d 228, 236 (Ind.1984), *reh'g denied,* we ruled that voluntary intoxication was not a defense to murder. Both the arson and murder statutes lacked the precise language required by the 1980 amendment. Although we had held that voluntary intoxication could be a defense to robbery before the revised statute took effect, *Williams v. State,* 273 Ind. 105, 402 N.E.2d 954 (1980), this was no longer true after the statute was changed. *Smith v. State,* 441 N.E.2d 984 (Ind.Ct.App.1982) (citing revised statute to uphold trial court's refusal to instruct jury on intoxication defense).

The intoxication defense enjoyed a revival on July 9, 1984 when *Terry v. State,* 465 N.E.2d 1085, 1088 (Ind.1984) declared the 1980 amendment to be "void and without effect," reasoning that the Indiana and U.S. Constitutions required voluntary intoxication to be available as a defense to any crime.[15]

**13.** *Cf. Scarpa,* 38 F.3d at 15, which undertook a *Strickland* prejudice analysis for the first time on appeal because the record was sufficiently developed and the parties had briefed the issue.

**14.** *See generally* Susan D. Burke, *The Defense of Voluntary Intoxication: Now You See It, Now You Don't,* 19 IND. L.REV. 147 (1986) (hereafter *"Voluntary Intoxication"*). For a detailed discussion of Indiana case law on the availability of

the intoxication defense before the 1980 amendment, see *Carter v. State,* 408 N.E.2d 790 (Ind.Ct. App.1980).

**15.** Recently the U.S. Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require states to allow voluntary intoxication as a defense. *See Montana v. Egelhoff,* 518 U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). Accordingly, *Terry* is no

We subsequently held in *Pavey v. State*, 498 N.E.2d 1195, 1196 (Ind.1986) that *Terry* applied retroactively and, accordingly, reversed a pre-*Terry* conviction because the evidence there supported an intoxication instruction to the jury. Here Van Cleave could have sought reversal of his conviction under *Pavey*, but only if he had gone to trial, sought and been denied an intoxication instruction, and the evidence supported giving the instruction. *Id.* at 1196–97. However, *Terry* and *Pavey* do not provide Van Cleave with a basis for a claim of ineffective assistance of counsel. The murder, robbery and attempt statutes in 1983 did not contain the precise "with intent to" or "with the intention to" language required by the now deceased 1980 amendment.[16] Van Cleave's lawyer cannot be faulted for failing to assert or investigate a defense that was unavailable at the time of conviction. As we held in *McChristion v. State*, 511 N.E.2d 297, 302 (Ind.1987), "[a]n attorney is not required to prophesy future court rulings and act in accordance with them." Otherwise stated, a lawyer's failure to be a jurisprudential clairvoyant does not support a claim of ineffective assistance of counsel.[17]

**B.** *Even if available, an intoxication defense would have failed.*

■ The postconviction court, without considering whether Van Cleave could have asserted an intoxication defense, concluded that "[o]n the night of the offense, [Van Cleave's] intoxication would have precluded his ability to form the conscious intent to rob or kill." Even assuming an intoxication defense would have been available, this finding is clear error. Had he gone to trial, Van Cleave would not have obtained a jury instruction on voluntary intoxication, much less an acquittal on these grounds. Under Indiana law, an intoxication instruction should be given only where "the evidence relevant to the defense, if believed, was such that it could have created a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state or specific intent." *Morrison v. State*, 462 N.E.2d 72, 74 (Ind.1984). As commentators have noted, *Terry* was a somewhat illusory victory for defendants because the "reasonable doubt" standard for the intoxication instruction is not an easy threshold to meet. *See Voluntary Intoxication, supra* note 14. In construing the statute that allows for the intoxication defense, we have held that the degree of intoxication is immaterial so long as the accused was still able to form the mens rea required for the crime. *See, e.g., Ferguson v. State*, 594 N.E.2d 790, 792 (Ind.1992). As we have reiterated in oft-quoted language, "[e]vidence that shows a defendant was not so intoxicated so that he could indeed form the requisite *mens rea* includes such things as his ability to devise a plan, operate equipment, instruct the behavior of others, or carry out acts requiring physical skill." *Owens v. State*, 659 N.E.2d 466, 473 (Ind.1995), *reh'g denied* (citing *Terry* ) (internal quotation marks omitted).

■ Van Cleave's intoxication clearly did not preclude him from forming the intent required for felony murder in this case. Felony murder occurs when the defendant kills another human being while committing, or attempting to commit, one of several felonies enumerated by statute, including attempted robbery, the underlying crime here. IND. CODE § 35–42–1–1(2) (1982).[18] Thus, to con-

---

longer good law to the extent it suggested IND. CODE § 35–41–3–5(b) violates federal due process guarantees. Today's opinion, however, should not be construed as expressing any other view on the precedential value of *Terry* in light of *Egelhoff*, as this question is not squarely before us. The defunct 1980 amendment remains on the books notwithstanding this Court's decision in *Terry*. *See* IND.CODE § 35–41–3–5(b) (1993).

16. *See* IND.CODE § 35–42–1–1(2) (1982) (felony murder); IND.CODE § 35–42–5–1 (1982) (robbery); IND.CODE § 35–41–5–1 (1982) (attempt).

17. Intoxication would have been relevant at the penalty phase in this case because intoxication was, and continues to be, a statutory mitigating circumstance in death penalty cases. IND.CODE § 35–50–2–9(c)(6) (1993). However, ineffective assistance at the penalty phase is not an issue here because the State has not challenged the reversal of Van Cleave's death sentence.

18. In our discussion here of a likely trial outcome, we cite the relevant criminal statutes as they existed at the time Van Cleave was charged with murder in this case (October 1982). Both the statutory and common law applicable to Van Cleave's case are largely unchanged since 1982.

vict Van Cleave of felony murder, the State would have had to prove: (1) an attempt to rob; and (2) a death in the course of the attempted robbery. No doubt exists as to the latter element. As Van Cleave himself testified, Robert Falkner was killed as Van Cleave and Sims approached Falkner to demand the television set. In contrast to the intent discussed above as a death penalty aggravating factor, Van Cleave's only relevant state of mind here is that necessary for attempted robbery. One of the most disputed factual issues in this case is whether Van Cleave intended to kill or shoot Falkner. However, this question is unrelated to Van Cleave's culpability for felony murder. The evidence needs to show only that Van Cleave intended to commit the underlying felony. Intent to kill is relevant at the penalty phase as a potential aggravating circumstance. IND.CODE § 35–50–2–9(b)(1) (1982).

The crime of attempt occurs when the defendant, acting with the mens rea required for commission of a particular crime, takes a "substantial step" towards carrying out that crime. IND.CODE § 35–41–5–1 (1982). Robbery occurs when the defendant knowingly or intentionally takes property from another by using or threatening to use force, or by putting the victim in fear. IND.CODE § 35–42–5–1 (1982). The evidence in this case unequivocally shows that on the night of October 19, 1982 Van Cleave knowingly, if not intentionally, attempted to take property from Falkner by using or threatening to use force, or by putting Falkner in fear. What constitutes a "substantial step" depends on the facts of the particular case, but this requirement is a minimal one, often defined as any "overt act" in furtherance of the crime. *Jones v. State,* 523 N.E.2d 750, 752 (Ind.1988). In approaching Falkner with a shotgun, Van Cleave was far over the threshold of taking a substantial step towards committing robbery. Indeed, defendants have been convicted of attempted robbery on much flimsier facts. *Cf. Hampton v. State,* 468 N.E.2d 1077 (Ind.Ct.App.1984) (defendant who was found wearing ski mask outside restaurant, but who did not enter res-

taurant or accost employees, took substantial step towards committing robbery). Armed with their loaded weapons, Van Cleave and Sims told Falkner to "shut up," and in so doing put Falkner in fear. The television set the two men planned to take lay in close proximity. In light of these facts, the substantial step requirement is easily satisfied. Van Cleave has offered nothing to question these conclusions, and in fact confirmed them at his sentencing hearing.

The only remaining issue is Van Cleave's mens rea at the time of the offense. Attempted robbery requires proof that the defendant "knowingly" or "intentionally" engaged in the criminal act.[19] Conduct is "intentional" if the defendant had a conscious objective to do the act in question. IND. CODE § 35–41–2–2(a) (1982). Conduct is "knowing" if the defendant was aware of a high probability that he or she was engaging in the conduct. IND.CODE § 35–41–2–2(b) (1982). Because any defendant who "intentionally" robs by definition also "knowingly" does so, here the evidence needs to show only that Van Cleave knowingly attempted to rob Falkner. Despite Van Cleave's intoxication, there is no reasonable doubt that he was aware that he was attempting to commit robbery. Van Cleave testified in detail at the sentencing hearing about the events surrounding the robbery and disclaimed intent to kill but, most importantly, conceded his intent to rob. In looking over his shoulder to see if anyone was watching him approach Falkner, Van Cleave demonstrated knowledge of the criminality of his actions. Van Cleave had no trouble explaining how the plan was hatched to steal the television and the specific acts that were taken to carry out the robbery attempt. Van Cleave also stated that he did not get sick from alcohol that evening and never fell or tripped due to intoxication. Regardless of his blood-alcohol content, Van Cleave was able to carry out acts requiring physical skill and was also able to direct the behavior of others.

---

**19.** *See* IND.CODE § 35–41–5–1 (1982) (attempt requires proof of mens rea required for underlying offense); IND.CODE § 35–42–5–1 (1982) (robbery requires proof of knowing or intentional conduct as to each element of offense).

Because Van Cleave's testimony showed an acute awareness of his actions related to the robbery attempt, no reasonable doubt exists that Van Cleave was capable of forming the general intent required for robbery, and in fact had formed that intent the night Falkner was killed. The postconviction court clearly erred in concluding otherwise. Our result here is consistent with prior Indiana cases in which voluntary intoxication was asserted as a defense. Indeed, defendants who would seem far better candidates for an intoxication defense have seen that effort fail. For example, in *Vickers v. State*, 653 N.E.2d 110 (Ind.Ct.App.1995) the defendant was convicted of resisting law enforcement—a crime that also requires "knowing" or "intentional" conduct.[20] A chemical test after his arrest revealed that Vickers had a blood-alcohol content of 0.35%, more than Van Cleave's speculated 0.25% in this case.[21] And unlike Van Cleave, Vickers claimed to have had "blackouts" and gone "in and out of consciousness" at the time the offense was committed. *Id.* at 113. Nonetheless the Court of Appeals affirmed the bench-trial conviction, reasoning that Vickers was aware of his conduct despite his intoxicated state. *Id.* at 113–14. As in *Vickers*, Van Cleave was conscious of his actions, intoxication notwithstanding, and therefore could not have succeeded with that defense at trial.[22]

### C. *Guilt was reliably established.*

█ The other evidence Van Cleave presented on postconviction review was of a mitigating but not exculpating character.

The postconviction court therefore properly set aside the sentence. However, assuming Van Cleave's lawyer would have presented at trial the mitigating evidence found to cast a reasonable probability of success at the penalty phase, there is no showing of a reasonable probability that Van Cleave would have been acquitted.[23] The State's case against Van Cleave was overwhelming: Van Cleave on several occasions confessed to shooting Falkner; two of Van Cleave's cohorts in the robbery testified to his participation; and all the physical evidence corroborated Van Cleave's culpability for felony murder. Although the mitigating factors found by the postconviction court are relevant to Van Cleave's argument for a lighter sentence, these factors do not negate the State's proof of his guilt. In fact, Van Cleave's trial lawyer testified on postconviction review that the newly-uncovered matters would have caused him to advise Van Cleave to go to trial not because acquittal was likely or even remotely possible, but because a jury might not have recommended the death sentence. Indeed, the defense strategy was aimed chiefly towards securing the most favorable outcome at the penalty phase. Van Cleave can finally achieve in 1997 what was due to him in 1983: the assistance of competent counsel at sentencing.

Since Van Cleave has not shown a reasonable probability that he would have been acquitted had a trial for felony murder taken place, Van Cleave has incurred no prejudice within the meaning of *Strickland*, *Hill*, and

20. IND.CODE § 35–44–3–3 (1993).

21. On postconviction review a toxicologist testified on the question of Van Cleave's intoxication. The toxicologist concluded, based on the amount of alcohol the four men claimed to have consumed on the night of the robbery attempt, that Van Cleave's blood-alcohol content could have been 0.25% at the time Falkner was shot. We do not, and need not, reweigh this evidence here because even taking it as true Van Cleave would have failed to qualify for the intoxication defense for the reasons we have discussed.

22. In another case with facts similar to those present here, the Court of Appeals ruled that the trial court properly denied an intoxication instruction in a prosecution for attempted robbery. *Cf. Douglas v. State*, 634 N.E.2d 811 (Ind.Ct.App.

1994), *trans. denied*. *Douglas* involved a defendant who consumed alcohol, marijuana and Valium (a prescription drug) before the crime, was staggering and slurring his speech, but was still able to approach the victim as planned and flee the scene after the robbery attempt went awry. *Id.* at 818.

23. We are mindful of *Strickland*'s instruction to disregard any evidence tainted by counsel's errors. *Strickland*, 466 U.S. at 695–96, 104 S.Ct. at 2068–69. In this case, however, counsel's deficient performance did not affect the State's evidence against Van Cleave on the question of his liability for felony murder. Rather, Van Cleave asserts his lawyer erred by failing to unearth mitigating evidence that would have led Van Cleave to go to trial to seek a more favorable outcome at the penalty phase.

*Fretwell.* For this reason, the postconviction court erred in setting Van Cleave's conviction aside.

### D. *The death penalty statute does not change the analysis.*

■ If this were anything other than a death penalty case, the foregoing analysis would dispose of this appeal. One issue remains, however, because in a death penalty case Indiana, with only three other states, provides for the jury to make a non-binding recommendation as to the sentence if it finds the defendant guilty.[24] IND.CODE § 35–50–2–9(d) & (e) (1993 & Supp.1996). This is a matter of state legislative policy. There is no federal constitutional right to a jury role in capital sentencing. *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Unlike Florida, where *Strickland* arose, no jury recommendation is provided in Indiana if the defendant pleads guilty or is convicted in a bench trial. Nor is the recommendation waivable by the defendant under the Indiana statute. Rather, the recommendation is automatically triggered if the conviction is by jury. IND.CODE § 35–50–2–9(d) & (e) (1993 & Supp.1996). With or without a jury recommendation, the trial court is obliged to reach its own decision as to the appropriate sentence. *Id.* By pleading guilty, a defendant forecloses the possibility of a favorable or unfavorable jury recommendation, and whatever effect, if any, a recommendation would have had on the trial court's sentence. In fact, as noted above, Van Cleave's trial counsel, in recommending a guilty plea, was significantly motivated by a desire to avoid a jury recommendation that he expected to be adverse.

■ The purpose of the requirement of effective assistance is "to ensure that criminal defendants receive a fair trial." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The same is true of the requirement of effective assistance at a sentencing hearing. It cannot be said that the elimination of the jury rec-

ommendation will have any effect at all on the outcome. It certainly cannot be predicted or ever known what, if anything, that effect might have been. And it is pure speculation whether any effect would be favorable or unfavorable to the defendant. Most importantly, the elimination of this step does not inject any unfairness or unreliability into the sentencing hearing. To the contrary, we are to presume that the trial judge will "act according to law." *Id.* at 693, 104 S.Ct. at 2067–68. This carries with it the presumption that the trial court will conduct a fair sentencing hearing and properly apply the mitigating and aggravating factors the law prescribes. Accordingly, the by-product of a guilty plea—elimination of the jury recommendation provided by Indiana statute—is not "prejudice" of federal constitutional dimensions.

In summary, we return to the fundamental point that prejudice in a guilty plea requires a showing of a reasonable probability that the outcome would be different, not merely the possibility of "some conceivable effect on the outcome of the proceeding." *Id.* Van Cleave's trial counsel's evaluation may be unreliable in concluding that a jury recommendation would be detrimental and not beneficial to Van Cleave. But elimination of the jury recommendation at most falls into the category of having "some conceivable effect" at sentencing. For the reasons explained in Part VII of this opinion, that is not enough to put the victim's family and the State through a retrial of a reliably guilty defendant.

### Conclusion

The State presented powerful evidence of Van Cleave's culpability for felony murder at his sentencing hearing. The mitigating evidence Van Cleave's lawyer failed to uncover, although relevant to Van Cleave's intent to kill, does not establish a reasonable probability of a different result had Van Cleave gone to trial. Van Cleave's intent to commit the underlying felony was never in doubt, and

---

**24.** The three other states providing a non-binding jury role in sentencing are Alabama, Delaware and Florida. *See* ALA.CODE § 13A–5–46 (1994) (if trial was by jury, recommendation waivable with consent of both parties and court); DEL.CODE ANN. tit. 11, § 4209 (1995) (for convictions tried to

jury same procedure as Indiana); FLA. STAT. ANN. § 921.141 (West Supp.1997) (providing for jury recommendation where defendant convicted by jury, as well as right to waivable recommendation for bench trial and guilty plea convictions).

the State would not have been required to prove intent to kill to convict Van Cleave of felony murder. There is no showing of any other factor casting serious doubt on the reliability of the guilty plea. Accordingly, Van Cleave was not prejudiced at the conviction stage by his attorney's errors and cannot establish a violation of his Sixth Amendment right to effective assistance of counsel sufficient to set aside his conviction. The post-conviction court's order vacating Van Cleave's conviction for felony murder is reversed. The case is remanded for a new sentencing hearing.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.