

FILED

Aug 08 2019, 5:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alandus James,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 8, 2019

Court of Appeals Case No.
18A-PC-3063

Appeal from the Elkhart Superior
Court

The Honorable Teresa L. Cataldo,
Judge

Trial Court Cause No.
20D03-1704-PC-22

**May, Judge.**

[1] Alandus James appeals the denial of his amended petition for post-conviction relief. James raises two issues on appeal: whether the trial court adequately advised him of the rights he was waiving by pleading guilty to a habitual

criminal offender ("HCO") allegation; and whether the State met its burden of showing James was nonetheless aware of the rights being waived. We affirm.

## Facts and Procedural History

On June 27, 2012, the State charged James with Class D felony battery on a child,[1] Class D felony strangulation,[2] and Class D felony residential entry.[3] On March 4, 2014, the State amended the charging information to add an HCO sentencing enhancement because on two prior occasions James had been convicted of sexual misconduct with a minor. On March 26, 2014, after being convicted by a jury on the felony charges, James pleaded guilty to the HCO enhancement without a plea agreement.

James appealed, challenging the court's order that he serve a thirty-month sentence for Class D felony residential entry consecutive to two concurrent eighteen-month sentences for Class D felony battery on a child and Class D felony strangulation, and we affirmed the trial court in an unpublished decision. *See James v. State*, No. 20A03-1405-CR-173 (Ind. Ct. App. Feb. 19, 2015). On April 24, 2017, James filed his *pro se* petition for post-conviction relief. The trial court appointed the Indiana State Public Defender to represent James, and on June 21, 2018, James filed an amended petition for post-conviction relief

_____

[1] Ind. Code § 35-42-2-1 (2014).

[2] Ind. Code § 34-42-2-9 (2014).

[3] Ind. Code § 35-43-2-1.5 (2014).

arguing that "his guilty plea was involuntary because the trial court had failed to advise him that he was waiving his right to confront and cross-examine witnesses and his right against self-incrimination." (Br. of Appellant at 5.)

[4] On July 20, 2018, the court held an evidentiary hearing. On November 30, 2018, the court issued an order denying James' amended petition for post-conviction relief. The court concluded:

> 12. The Record herein shows that certain explicitly stated rights were not articulated by the trial court judge at the specific time of the guilty plea; however, they were expressed earlier in the trial proceedings. Also, there was no evidence presented at the post[-]conviction hearing from the Petitioner that he was inadequately informed or unaware that he was waiving the three rights stated in [*Boykin*[4]]. Moreover, at the time of his guilty plea, the trial court noted on the record that the stage of the proceedings was just after the jury had returned the guilty verdict on the three D felony counts, and explained the Habitual Offender admission would apply to and enhance the sentence. The judge asked the Petitioner if he understood the penalties associated with the Habitual Offender Enhancement, and Petitioner responded, "yes, your Honor." The trial court judge also said, "now you have all the rights to have an attorney, which you have." Petitioner was also told that he had the right to a jury trial and that the jury was "ready to roll," and it appeared to the court that the Petitioner was familiar with how the jury process worked, trial having just ended. The court then asked the Petitioner if he had any questions at all about his rights. The Petitioner

---

[4] *See Boykin v. Alabama*, 395 U.S. 238 (1969) (holding three federal constitutional privileges—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—are waived when a plea of guilty is entered in a state criminal trial).

asked the judge if he was referring to a jury trial on the Habitual, and the court said, "yes, right." Then the Petitioner asked the Court if all the [S]tate had to prove was that he had two prior felonies, and the Court replied, that was what it boiled down to. But, the trial court judge then proceeded to explain to the Petitioner that he had the right to "sit back and go through it, see how it comes out", but that his attorney had suggested that he may want to admit, to which the Petitioner responded, "Yeah."

13. The guilty plea colloquy proceeded with the judge asking the Petitioner if he had any further questions and he responded, "no." Thereafter, the judge told the Petitioner that the court had to be satisfied that the Petitioner understood the proceedings and had the mental clarity of mind to decide to plead guilty. The trial court judge indicated that he had observed the Petitioner, heard his testimony and that he was satisfied; however, the judge again asked the Petitioner if that was a correct statement, and Petitioner said "yes." The Court asked Petitioner if it should go ahead with the guilty plea on the Habitual enhancement, and the Petitioner said "yes." (Trial Transcript, pp. 504-507).

14. It is evident to the Court from the guilty plea colloquy that Petitioner was specifically advised that he had the right to an attorney. Also, the Court noted that based on the Petitioner's testimony earlier in the day and during the trial process, he was acutely familiar with the rights against self[-]incrimination. Further, he had employed his right to confront and cross-examine witnesses during the immediately preceding two[-]day trial. Additionally, the court had told Petitioner that even though he was correct that the [S]tate had to prove two prior felonies, the Petitioner had the right to require the State to put on witnesses and evidence to prove the Habitual Offender Enhancement. Therefore, based on the record and evidence, it cannot be said that Petitioner was unaware that he was waiving his [*Boykin*]

rights." [*See, e.g. Winkleman*], 22 N.E.3d at 852 (defendant voluntary [sic] pled guilty to an enhancement in the midst of a jury trial where [*Boykin*] rights were clearly on display; therefore, defendant did not establish that he was unaware that he was waiving those rights). To the contrary, the record and evidence establish[] that the Petitioner understood that by admitting the Habitual Offender Enhancement he was waiving his right to an attorney, right to a jury trial, right against self[-]incrimination and right to confront and cross-examine witnesses.

Accordingly, his plea of guilty was voluntary. The Petitioner has not met his burden of demonstrating that he was inadequately advised of his rights at the Habitual Offender stage of the proceedings held on March 25, 2014.

(Appellant's App. Vol. II at 45-47.)[5]

# Discussion and Decision

[5] Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Connor v. State*, 711 N.E.2d 1238, 1244 (Ind. 1999), *reh'g denied*, *cert. denied* 531 U.S. 829 (2000); *see also* Ind. Post-Conviction Rule 1(1)(a). Such proceedings are not "super appeals" through which convicted persons can raise issues that they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002), *reh'g denied*. Post-conviction proceedings are civil in nature, and

---

[5] We thank the post-conviction court for its thorough and informative order, which greatly assisted our consideration of James' claims.

petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. P-C.R. 1(5).

[6] When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Curry v. State*, 674 N.E.2d 160, 161 (Ind. 1996). Consequently, we may not reverse the judgment of the post-conviction court unless the petitioner demonstrates that the evidence "as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not give deference to the court's conclusions of law. *State v. Van Cleave*, 674 N.E.2d 1293, 1295-96 (Ind. 1996), *reh'g granted on other grounds* 674 N.E.2d 1293, *cert. denied* 522 U.S. 1119 (1998).

[7] In *Boykin v. Alabama*, 395 U.S. 238 (1969), the United States Supreme Court held a trial court must advise a defendant of his right against self-incrimination, right to trial by jury, and right to confront his accusers. *Id*. at 243. Our court has held *Boykin* "does not require that the record of the guilty plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights[,]" nor does the holding require that the record contain a formal waiver of those rights. *Barron v. State*, 330 N.E.2d 141, 144, 164 Ind. App. 638, 644 (1975). However, we are required to reverse a conviction if the defendant did not know he was waiving his *Boykin* rights when he pled guilty. *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001).

[8]     James asks us to reverse the judgment of the post-conviction court and vacate his HCO enhancement because: (1) the trial court did not advise him that he was waiving his *Boykin* rights prior to accepting his guilty plea to the HCO charge, and (2) the State did not meet its burden of showing James nonetheless was aware of the rights he was waiving.

[9]     James first argues the court, prior to accepting his guilty plea, made no mention of the right to confront witnesses or the right to remain silent. We agree, based on the following dialogue, that the trial court did not explicitly advise James of his *Boykins* rights:

> [Court]: Now, you have all rights to have an attorney, which you have. I think you ought to kind of be familiar with the jury process now. You have a right to a jury trial, and they're ready to roll I think. And so do you have any questions at all about your rights there?
>
> [James]: A jury trial on the Habitual?
>
> [Court]: Yes. Right.
>
> [James]: All you have to prove [is] that I have two prior felonies?
>
> [Court]: Well, that's what it boils down to. Okay. But you know you have the right to sit back and go through it, just kind of see how it comes out, or the suggestion that your attorney had made a little bit ago was that it sounded like you might just want to say you are going to admit that's true and put this up for sentencing on the D with Habitual?

[James]: Yeah.

(Prior Case Tr. Vol. III at 504-05.)

[10] However, because the HCO stage of James' trial immediately followed his jury trial, we reject James' second argument that "the fact that he exercised them at the felony phase does not show such knowledge, as it does not show that James knew that those rights would carry over to the habitual phase." (Appellant's Br. at 11.) The trial court told James he had a right to a jury and that James "ought to kind of be familiar with the jury process now," (Prior Case Tr. Vol. III at 504), because James had just finished the jury trial of the underlying felonies. The court's language indicates the process for the HCO phase would be the same as the felony phase. Accordingly, the record demonstrates James was aware of the rights he was waiving to plead guilty during the HCO phase because he had just exercised those rights during the felony phase. *See Winkleman v. State*, 22 N.E.3d 844, 851 (Ind. Ct. App. 2014) (defendant knew *Boykin* rights based on the fact he was in the midst of a jury trial at the time he admitted to habitual offender allegation), *trans. denied*; *see also Barron*, 330 N.E.2d at 144, 164 Ind. App. at 644 (defendant knew his rights under *Boykin* based on the fact that he was advised of his rights during arraignment); *see also Dewitt*, 755 N.E.2d at 171 (defendant knew his rights under *Boykin* because he had been advised of them during arraignment). James has not demonstrated the post-conviction court's denial of his petition was contrary to law.

# Conclusion

As we conclude James knew his constitutional rights under *Boykin* when he pled guilty to the HCO by virtue of the trial court's partial advisement, which occurred just after the jury had returned its verdicts on James' underlying felonies, James has not demonstrated the post-conviction court's judgment was contrary to law. Accordingly, we affirm.

Affirmed.

Mathias, J., and Brown, J., concur.